**UNITED STATES FIDELITY AND
GUARANTY COMPANY, a Mary-
land corporation, Appellant,**

v.

**Henry H. LEMBKE, Jr., Appellee.**

No. 7393.

United States Court of Appeals
Tenth Circuit.

March 3, 1964.

Harold B. Wagner, Denver, Colo. (Raymond A. Wagner and Carl A. Wyers, Denver, Colo., were with him on the brief), for appellant.

Jackson M. Seawell, Denver, Colo., for appellee.

Before PICKETT, LEWIS, and SETH, Circuit Judges.

SETH, Circuit Judge.

The insured, Henry H. Lembke, Jr., brought an action in the United States District Court for the District of Colorado against the United States Fidelity and Guaranty Company, the insurer, by a complaint alleging that the appellant was negligent in its investigation of a claim brought by Irving J. Hayutin against appellee, and further that the appellant acted in bad faith in not making a settlement of this claim for less than the policy limits when it had an opportunity to do so. A jury trial was had and judgment was entered for appellee in the amount of $24,000, from which appellant appeals.

The appellant had issued what it described as a comprehensive general liability policy to the appellee, the property damage liability portion of which had a limit of $5,000. Lembke was engaged in the plumbing and heating business, and had installed the plumbing for the residence of Irving J. Hayutin and his wife. The Hayutins claimed that their

residence was damaged by water leaking under it from fixtures installed or damaged by appellee. On the basis of this claim, they brought action against appellee in the District Court of Arapahoe County, Colorado, and recovered a judgment in the amount of $26,000. It was this claim or suit which the appellee in his complaint herein alleged should in good faith have been settled within the policy limits, and complained that the appellant was negligent in its investigation thereof.

The sequence of events insofar as they indicate the investigation and negotiation of the claim of the Hayutins may be described as follows: The claim under the policy was filed by the insured in April 1955, and a letter in September 1955 from the claimant to the appellant-insurer set out in some detail his analysis of the cause of damage to the house and the events leading up to it. In May 1956 an engineer was employed by appellant-insurer and he inspected the house. In July 1956 statements were secured from the plumbers who worked on or inspected the installation. In January 1956 the claimant received a report from a damage appraisal he had made which showed the damages to be in the amount of $26,000. In October 1957 the claimant offered to settle for $4,591.47, and the appellant rejected this offer. At the time of this rejection it had in its possession a copy of the above damage appraisal for the claimant, but claimant before suit did not make a definite claim for the amount shown in it. Before this rejection appellant had also rejected claimant's offer of $6,000 with a counter offer of $2,000. This counter offer was then repeated in the refusal of claimant's offer of $4,591.47 made in October 1957.

Near the end of 1957 claimant wrote the insured that suit would be filed shortly if settlement was not made, and appellant was advised of this letter. The suit was however filed in May 1959, and the appellant made an offer of $3,000 thereafter. Appellant's adjuster testified that he had inspected the house and was aware that it was damaged extensively and in an amount over the policy limits. The claimant's attorney after suit was filed indicated to appellant that he would discuss nothing but a figure of somewhere around $20,000. Appellant's consulting engineer inspected the house in 1956 and several times in 1960. As mentioned, the claimant was successful in his suit against appellee, and the jury awarded a judgment of $26,000.

The damage to claimant's house was caused by water soaking into the clay under the slab foundation. This caused the clay soil to expand and thereby to cause the walls to crack and the doors and windows to jam. It appears that the damage was progressive and the water apparently came from a leak in a water pipe under the house.

As indicated above, the parties had entered into a contract of insurance which set out the limits of the coverage for property damage. The contract also set out in some detail the relationship of the insurer and the insured as to many matters, but did not specify the obligations to each other in the matter of negotiation and settlement of claims made against the insured. The policy provided that the insurer would have control of litigation; that it must defend the insured against any suit, and that it "may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; * * *." This permissive language as to settlement of claims or suits is by the majority of modern authority held to place a variously described duty on the insurer to settle. This duty is generally considered to arise from the insurer's control over the decision to settle within the policy limits. This control raises a distinct possibility of a difference of opinion as to whether a settlement within the policy limits should be made or not. The insurer's power over the decision to settle thus can involve and affect the insured's pocketbook, and since the interests of both are involved, the one with the control must consider the effect of its decision on the other.

The appellant's principal arguments, although specific points are indicated,

center about the standard or test to be applied to the manner in which it handled the investigation of the claim and the negotiations to settle with the claimant. The appellant urges that bad faith rather than negligence is the test to be applied, but urges in so doing that the term "bad faith" should be considered to be a form of fraud. Also appellant asserts that the trial court was in error because it insisted that the case was not a fraud case. This matter of the proper standard relates also to appellant's arguments concerning the denial of its motions by the trial court, the sufficiency of the evidence, and the instructions given and refused. This question of the proper standard to be applied under these circumstances will be first discussed.

■ The cause of action arose in the state of Colorado and jurisdiction is based on diversity of citizenship. The resolution of state law is of course implicit in such cases. This is especially troublesome in instances such as this where there are no reported cases of the state courts passing directly on the point here concerned. Under these circumstances, we have held that the trial court's determination of the law of the state wherein it sits will not be disturbed unless we are clearly convinced to the contrary. Missouri Pacific Railroad Co. v. American Refrigerator Transit Co., Tenth Circuit, 328 F.2d 569; Dallison v. Sears, Roebuck and Co., 313 F.2d 343 (10th Cir.); F & S Construction Co. v. Berube, 322 F.2d 782 (10th Cir.).

The trial court instructed the jury that the mere fact that a settlement was not made does not impose any liability on the appellant; that the appellant was obligated under the policy to defend any suit brought against the appellee, and under the policy the appellant "may make such investigation, negotiation and settlement of any claim or suit as it believes expedient." The court further instructed the jury that under the policy, the appellant had the right to control the litigation and the right to accept or reject any offer of settlement. The court also stated: "However, the law does im-

pose upon the defendant the duty to exercise diligence, intelligence, good faith, and honest and conscientious fidelity to the common interest of the plaintiffs as well as the defendant in the investigation of the facts in coming to its decision not to accept the offer of settlement. While the defendant, in determining whether to accept or reject an offer of settlement, may properly give consideration to its own interest, it must in good faith give at least equal consideration to the interest of the insured—in this case, the plaintiffs—and if it fails to do so, it acts in bad faith." The court further instructed that the burden was on the plaintiffs to prove it did not fulfill such duties by a preponderance of the evidence.

■ These instructions express the trial court's determination of the applicable law of Colorado. We have on several occasions passed on this matter in cases arising from other jurisdictions, and in these cases have held that identical or similar standards are proper in such jurisdictions. The cases of this court include the following: In Traders & General Ins. Co. v. Rudco Oil & Gas Co., 129 F.2d 621 (10th Cir.), a case arising from Oklahoma, this court stated that the insurer's right to control the litigation carries with it the duty to exercise diligence, intelligence, good faith, honest and conscientious fidelity to the common interest of the parties. The court also said that the insurer may properly give consideration to its own interest in the acceptance or rejection of offers to settle; but it must give at least equal consideration to the interest of the insured, and if it does not do so, it acts in bad faith. The same standard is described in a series of other cases which followed also arising from Oklahoma. Also in Prickett v. Hawkeye-Security Insurance Co., 282 F.2d 294 (10th Cir.), this court stated that the insurer, under the circumstances here under consideration, must exercise good faith toward the insured. The equal consideration standard was also there described in this case arising in Kansas. An extensive annotation and a placing of many cases in various categories ap-

pears at 40 A.L.R.2d 168. The matter is further discussed in 7A Appleman, Insurance Law and Practice § 4711 (1962 Ed.). Thus the considered judgment of the trial court as to what the law of Colorado is on this point is accepted for this appeal.

■■ The cases and texts cited which describe the standard to be one of good faith or of equal consideration do not consider that fraud is an element. The term is instead used to describe, as the trial court did, an honest and conscientious consideration of the interests of both parties. This action was consequently not an action in fraud, and the trial court's ruling on the motions and the instructions was therefore correct. The quantum of proof required by the plaintiff was one of the preponderance of the evidence, as instructed by the trial court.

■ Appellant urges that the trial court was in error in granting the appellee's motion for a jury trial. The request or motion for jury trial was made after the time in which a demand could have been filed. The court considered the motion under Rule 39(b) of the Rules of Civil Procedure, and in its discretion granted the motion. The trial court has broad discretion in determining whether a jury trial shall be granted under these conditions. This court will not reverse the trial court's action unless it appears from all the facts and circumstances that the court abused its discretion. Hazelrigg v. American Fidelity & Casualty Co., 241 F.2d 871 (10th Cir.). We find nothing here to indicate that there was such an abuse of discretion.

■ From an examination of the record, we hold that there was sufficient evidence for the case to go to the jury under either a bad faith standard or a negligence standard, and consequently the court's ruling on these points was correct. The jury was properly instructed and reached its verdict.

We find no error, and the case is affirmed.