No. 45,179

WALTER BOLLINGER (Plaintiff), *Appellant*, v. KARL NUSS (Defendant), *Appellant*, and WESTERN CASUALTY AND SURETY COMPANY (Garnishee), *Appellee*.

(449 P. 2d 502)

Opinion filed January 25, 1969.

*Lee Turner* of Great Bend, argued the cause, and *J. Eugene Balloun* and *Max E. Eberhart,* of Great Bend, were with him on the brief for appellant Bollinger.

*Robert E. Southern,* of Great Bend, was on the brief for appellant Nuss.

*Don C. Foss,* of Great Bend, argued the cause, and *Tudor W. Hampton, Jerry M. Ward* and *Norman G. Bailey,* of Great Bend, were with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This was a garnishment proceeding to determine the extent of the insurer's liability where a judgment rendered against its insured exceeded policy limits.

The plaintiff, Walter Bollinger, recovered a judgment for $30,483.84 against the defendant, Karl Nuss. Defendant's insurer, Western Casualty and Surety Company, using the services of Mr. Tudor W. Hampton, an attorney of the Barton County Bar, defended the case under the obligations of its policy. After the insurer paid its policy limits of $25,000 into court, an order of garnishment was issued against the insurer. Both plaintiff and defendant took issue with the garnishee-insurer's answer which stated it owed nothing further on the judgment. The issue tried to the court at the garnishment hearing was whether or not the garnishee-insurer was negligent or acted in bad faith in respect to settlement negotiations and in the defense of the case. The lower court determined the matter in favor of the garnishee-insurer, and plaintiff and defendant have appealed, stating their respective positions on appeal are identical, and presenting the points to be considered in a single brief.

Although the several points urged by appellants all relate to the proceedings in garnishment, the principal question centers on the trial court's determination that the insurer was not negligent and did not act in bad faith during the course of settlement negotiations, or in conducting the defense of the action on behalf of the defendant-insured. Since there was some conflict between the testimony of the defendant and that of Mr. Hampton, who were the only witnesses at the garnishment hearing, we will summarize the evidence in the light most favorable to the prevailing party below, the garnishee-insurer.

On November 3, 1963, as plaintiff was walking across the street, he was struck by an automobile driven by the defendant. Plaintiff sustained bodily injuries which necessitated hospitalization, and treatment by several physicians. His actual medical and hospital expenses, as later determined by the jury, amounted to $2,873.84.

Plaintiff filed suit on September 30, 1964, against defendant for $85,000. As previously indicated, the maximum coverage provided by defendant's policy was in the amount of $25,000. After the

action was filed, an associate of Mr. Hampton dispatched a letter by certified mail to the defendant. The pertinent portions of that letter follow.

"This is to advise you the amount sued for in said petition is in excess of your coverage under your policy with Western Casualty and Surety Company, your insurance carrier. The company will, of course, defend you to the limits of your policy, but if on account of the demand in excess of your coverage you wish to employ counsel at your cost to represent your interests, above your coverage or make an independent investigation of the accident in question, feel free to do so. However, unless you wish legal representation of your own to represent your interests as may be involved, it will not be necessary to take such steps as we as attorneys for your company will represent your personal interests without costs to you.

"Rest assured everything possible will be done to protect you in accordance with the terms and within the policy limits."

After a conference with Mr. Hampton about the letter, and also a discussion of the facts pertaining to the accident, defendant stated he would be satisfied if Hampton would "go ahead and handle the case on his behalf along with the insurance company." Hampton further advised defendant he would have to pay any amount over and above the policy limits. Hampton testified, "I advised him that if it [the judgment] went above $25,000.00, it would be his baby, he would have to take care of that." Thereupon, Hampton filed an answer denying negligence on the part of the defendant and alleging that plaintiff was contributorily negligent. An exchange of interrogatories and the taking of depositions, including that of one of plaintiff's doctors, followed. Medical reports from plaintiff's doctors were also made available to Hampton, who, in turn, discussed their contents with defendant. Hampton told defendant about plaintiff's alleged permanent injuries, that the major disability claim was loss of hearing, and that plaintiff "had a hole in the side of his leg." Defendant was also informed of the approximate medical expenses being claimed.

During pendency of the action defendant made twenty to thirty visits to Mr. Hampton's office to discuss the case. At these conferences defendant always maintained that plaintiff was partly to blame for the accident because, in defendant's opinion, had plaintiff been paying attention to where he was going, he would have seen defendant's automobile and gotten out of the way. But Hampton told the defendant the defense of contributory negligence would be very difficult to prove because of plaintiff's alleged loss of memory and lack of an eyewitness.

It appears that at a pretrial conference (the date not disclosed in the record) plaintiff was informed of the insurer's policy limits of $25,000. Prior to trial on June 20, 1966, Hampton made two offers of settlement, both of which were with defendant's knowledge: the first for $7,500 in March 1966; the second for $10,000 about a week before trial. Hampton had recommended, and received authority from the insurer, to settle the case if it could be accomplished in the range of $10,000. The only offer submitted by plaintiff's counsel was in a letter dated May 11, 1966, in the amount of $23,500. The offer was discussed by Hampton and the defendant. Both expressed the opinion plaintiff would not receive that much money if the case were tried. In response to a question by Hampton, the defendant said, "Let's try it," and Hampton said, "All right, we will try it." Hampton told defendant he thought the verdict would "hit somewhere between ten to twenty thousand dollars."

At trial, in addition to his own testimony, plaintiff offered the testimony of four physicians who had treated or examined him. After plaintiff rested, and during the noon recess, Hampton and defendant had lunch together and discussed the case. Hampton informed him there had been no evidence thus far to prove plaintiff was contributorily negligent and that "it might be better under those circumstances to admit that we were the negligent party involved here, and ask for mercy in the amount of money." Hampton said he thought this would be good strategy. The decision was made to put the defendant on the stand "in the hopes that the jury would realize that he was a pretty good fellow," and also to tell how the accident happened.

Hampton did not seek to have plaintiff examined by doctors and, consequently, did not present any evidence regarding plaintiff's physical condition or claimed injuries. Hampton explained his decision by saying that after he reviewed all the medical reports made available to him by plaintiff's counsel, he thought the finding were reasonably accurate and that he "might as well go with their doctors instead of taking a chance of getting a doctor that would help them out more than what they had."

In his final argument to the jury, Hampton admitted liability on the part of the defendant-insured and suggested the only question to be decided concerned the amount of the verdict. Despite the admission, the case was submitted to the jury as if defendant's negligence and plaintiff's contributory negligence remained as issues in

the case. Following the verdict, Hampton, on behalf of the defendant, filed a motion for new trial, or in the alternative, a remittitur, the same being overruled by the trial court.

After hearing all the evidence at the garnishment hearing, the trial judge made rather extensive comments to the effect the verdict, in his opinion, was larger than anyone could reasonably have forecast. He specifically found there was no evidence of fraud, bad faith or negligence in the handling of the lawsuit. Thereupon, judgment was entered in favor of the garnishee-insurer.

Appellants strenuously argue that the trial court's findings were not supported by substantial, competent evidence, and judgment should have been granted in their favor as a matter of law. They base their argument principally on the proposition that under the undisputed evidence, the insurer was negligent and acted in bad faith in declining to settle the case within policy limits.

We note that the garnishee-insurer has abandoned any contention that the plaintiff, as a judgment creditor of the insured, cannot maintain a direct action, or institute garnishment proceedings, against the insurer for an excess judgment, based on bad faith and negligence on the part of the insurer in refusing to settle within policy limits (*e. g.,* see, *Dillingham v. Tri-State Ins. Co.,* 214 Tenn. 592, 381 S. W. 2d 914; *Murray v. Mossman,* 56 Wash. 2d 909, 355 P. 2d 985, and cases cited therein). Since the appellants present their argument as if their respective positions are identical, the insurer appears content to disregard any question of plaintiff's right to complain of negligence or bad faith of an insurer toward its insured.

The insurance policy was not made a part of the record. We are told, however, it was a standard-type liability policy reserving to the insurer the right to make such investigation and settlement of any claim or suit as it deemed expedient. Of course, under such a policy, the insurer is obligated to defend any action against the insured, even if the suit is groundless, false or fraudulent.

The area of the law involving an insurer's liability for judgments in excess of policy limits has been fraught with uncertainty from its inception. Two theories of liability denominated as the "negligence theory" and the "good faith theory" have arisen, both recognizing an insurer's amenability to suit, but disagreeing about the strict legal standard of conduct chargeable to it.

This court has had only scant occasion to consider the duty of an insurer in defending and settling claims or actions against its insured. In *Anderson v. Surety Co.*, 107 Kan. 375, 191 Pac. 583, 21 A. L. R. 761, we said the insurer was liable for the full amount of the insured's loss, irrespective of policy limits, if it was negligent in conducting the defense for the insured. The case apparently turned on the failure of the insurer to set up a violation of law as a defense; however, we note the insurer had an opportunity, but refused, to settle the claim within policy limits prior to trial.

A later case, *Bennett v. Conrady*, 180 Kan. 485, 305 P. 2d 823, involved an insurer's liability in the settlement of less than all of several claims against its insured. There, for the first time, the court spoke of bad faith, as well as negligence, and stated the rule to be applied was that the insurer of a liability or an indemnity policy would be liable for the full amount of its insured's resulting loss, even if that amount exceeds the limit of the policy, for *negligence* or *bad faith* in defending or settling an action against the insured. The court noted that once the insurer steps into the negotiations between its insured and an injured claimant, due care must be exercised by the insurer to protect the rights of the insured. The degree of care to be exercised by the insurer in the settlement of claims was said to be that which a person of ordinary care and prudence would exercise in the management of his own affairs. The opinion emphasizes the wide variation in the decisions applying the negligence test or good faith test in respect to the duty of the insurer to consider the interests of the insured in approving or rejecting a settlement within policy limits. The court also stated:

"Because of possible conflict of interest between an insurance company and its insured in the defense or settlement of claims against the insured there is a mutual fiduciary relationship whereby each owes the other the duty to exercise reasonable care in conducting such defense or settlement." (Syl. ¶ 5.)

Under the facts and circumstances of that case the court concluded the insurance company exercised *due care* to protect the rights of its insured and acted in *good faith* in making the settlements.

The *Anderson* and *Bennett* cases have apparently led to some confusion among the annotators and textwriters as to whether Kansas recognizes both the negligence test and the good faith test. (See, Anno. 40 A. L. R. 2d 168; 14 Couch on Insurance 2d, §§ 51:132, 51:135; 7A Appleman, Insurance Law and Practice §§ 4712, 4713.)

We read these cases to mean that liability may be imposed against the insurer on either theory. In other words, the insurer, in defending and settling claims against its insured, owes to the insured the duty not only to act in good faith but also to act without negligence.

In the vast majority of cases passing upon the question, the courts have held that a liability insurer, having assumed control of the right of settlement of claims against the insured, may become liable in excess of its undertaking under the policy provisions if it fails to exercise good faith in considering offers to compromise the claim for an amount within the policy limits. (See, Anno. 40 A. L. R. 2d 168 § 4.) While some courts have expressly rejected the negligence test and permitted recover only if the insurer has failed to exercise good faith (*Brown v. Guarantee Ins. Co.*, 155 Cal. App. 2d 679, 319 P. 2d 69, 66 A. L. R. 2d 1202; *Murach v. Massachusetts Bonding & Ins. Co.*, 339 Mass. 184, 158 N. E. 2d 338; *Radio Taxi Service, Inc. v. Lincoln Mutual Insurance Co.*, 31 N. J. 299, 157 A. 2d 319; *Maroney v. Allstate Ins. Co.*, 12 Wis. 2d 197, 107 N. W. 2d 261), we are not inclined to do so. Public policy dictates that the insured's interests be adequately protected, and we believe this may be best accomplished by holding that both due care and good faith are required of the insurer in reaching the decision not to settle. (See, *Dalrymple v. Alabama Farm Bureau Mutual Ins. Co.*, 267 Ala. 416, 103 So. 2d 711; *Southern Farm Bureau Casualty Ins. Co. v. Parker*, 232 Ark. 841, 341 S. W. 2d 36; *State Farm Mutual Automobile Insurance Co. v. Jackson*, 346 F. 2d 484 [8th Cir. 1965], applying Arkansas law with instructions on both theories; *Cernocky v. Indemnity Ins. Co. of N. America*, 69 Ill. App. 2d 196, 216 N. E. 2d 198; *Murray v. Mossman*, supra; *United States Fidelity and Guaranty Company v. Lembke*, 328 F. 2d 569 [10th Cir. 1964], applying Colorado law; *Fidelity and Casualty Company of New York v. Robb*, 267 F. 2d 473 [5th Cir. 1959], applying Texas law.)

The imposition of liability against an insurer for failing to exercise due care in settling a suit is perhaps a stringent standard by which to measure the insurer's duty. In fact, it has been said less culpability is involved in the application of the negligence test than the good faith test. (*Brown v. Guarantee Ins. Co.*, supra.) It must be remembered, however, that the insured has surrendered a valuable right: that of conducting an investigation and considering possible offers of settlement. Since the absolute control of the defense is turned over to the insurer so that it may reject settlements

within policy limits, and as a result, expose the insured to payment of all sums in excess of policy limits, surely it is not asking too much to require the insurer to act without negligence.

Typical of those jurisdictions which have employed the negligence or due care theory in determining whether or not the insurer rendered itself liable to the insured when it dealt with a settlement matter is the state of New Hampshire. In *Douglas v. Company*, 81 N. H. 371, 127 Atl. 708, 37 A. L. R. 1477, the court stated:

". . . Our law upon the subject is based upon the broad proposition that in all its dealings with the defense to Elliott's claim the defendant was bound to act as a reasonable man might act under the same circumstances.

. . . . . . . . . . . .

"The fundamental question is, does or does not the insurer owe to the insured a duty in the matter of a settlement? If it does not owe such a duty, it is not liable either for a failure to act or for the manner of action. It may refrain from completing a settlement for any reason, however essentially dishonest, and still there would be no liability. If, as the cases roundly state, it has an exclusive and absolute option, no one can question its motives for the exercise or non-exercise of the privilege. No case has gone that far. All acknowledge a liability for fraudulent conduct, or lack of good faith, in refusing to settle. But they are silent as to any reasoning which would sustain such liability and at the same time deny responsibility for negligent conduct.

"The whole question of insurance against loss may be laid out of the case, and still the defendant would be accountable for negligence. It had contracted to take charge of the defense of this claim. That contract created a relation out of which grew the duty to use care when action was taken. The insurer entered upon the conduct of the affair in question. It had and exercised authority over the matter in every respect, even to negotiating for a settlement. It is difficult to see upon what ground it could escape responsibility when its negligence resulted in damage to the party it had contracted to serve. . . ." (pp. 375-376.)

The *Douglas* case was quoted and followed in *Dumas v. Hartford* &c. *Ind. Co.*, 94 N. H. 484, 56 A. 2d 57, where the court added:

". . . It is a well-recognized rule in the law of negligence that, when one knows or has reason to anticipate that the person, property, or rights of another are so situated as to him that they may be injured through his conduct, it becomes his duty so to govern his action as not negligently to injure the person, property, or rights of that other. . . ." (p. 488.)

No attempt will be made to group the many cases dealing with the duty of the insurer to settle or compromise a claim against its insured. That has been admirably accomplished by the author of the extensive annotation in 40 A. L. R. 2d 168. As we indicated in *Bennett v. Conrady*, supra, the generally accepted rule in all jurisdictions is that in rejecting a compromise offer of settlement within

policy limits, the insurer is bound to give some consideration to the insured's interests. The universal recognition that the insurer owes a duty, however, has not yielded rules which clearly define that duty. The decisions often hinge upon the question of whether the insurer's liability is to be determined by the criteria of good faith or by that of due care. As a result, the development of these tests has not produced rules susceptible to easy application. The decisions indicate a tendency to determine liability upon a case-by-case basis.

The dichotomy developed in the early cases, depending on whether the insurer's obligation was measured by good faith or due care, has tended to dissipate. Actually, the divergency between the good faith test and negligence test may be more a difference in verbiage than results. While the terms "negligence" and "bad faith" are not synonymous or interchangeable in a strict legal sense, they share common hues in the insurer's spectrum of duty, and the distinction between the tests is less marked than the terms would suggest. Professor Keeton, in his article *Liability Insurance and Responsibility For Settlement,* 67 Harv. L. Rev. 1136 (1954), emphasizes the lack of distinction by pointing out that even those jurisdictions following the bad faith rule recognize, at least by implication, that the company must, if it fails to settle, defend with ordinary care, and that negligence in investigation which leads to a mistake in failing to settle is also a breach of this duty of ordinary care of defense. Furthermore, a minimizing effect of the distinction is the adoption by some courts of a dual standard requiring not only good faith as to the decision regarding settlement, but also ordinary care in the investigation leading to such decision. (See, *Hilker v. Western Automobile Ins. Co.,* 204 Wis. 1, 231 N. W. 257; *Radio Taxi Service, Inc. v. Lincoln Mutual Insurance Co.,* supra; *Gedeon v. State Farm Mut. Auto. Ins. Co.,* 410 Pa. 55, 188 A. 2d 320.) We further noted in *Bennett v. Conrady,* supra, that in the more recent cases the two tests have tended to coalesce, so that even those courts which reject the negligence test and apply exclusively the test of good faith, nonetheless, consider the insurer's negligence relevant in determining whether or not the insurer exercised the requisite good faith (*e. g., Henke v. Iowa Home Mutual Cas. Co.,* 250 Iowa 1123, 97 N. W. 2d 168; Anno. 40 A. L. R. 2d 168 § 6; 7A Appleman, Insurance Law and Practice §§ 4712, 4713; 14 Couch on Insurance 2d § 51:135; 7 Am. Jur. 2d, Automobile Insurance § 156; 45 C. J. S., Insurance § 936b).

The provisions of the policy requiring the insurer to defend also encompass the negotiation of any settlement prior to trial. When a claim is made against the insured for an amount in excess of the policy coverage, the insurer's obligation to defend creates a conflict of interests on its part. On the one hand, its interests lie in minimizing the amount to be paid; on the other, the insured's interests, which the insurer is supposedly defending, lie in keeping recovery within policy limits, so that he will suffer no personal financial loss. The conflict becomes particularly acute where there is an offer of settlement approximating policy limits. The insured's desire to avoid the risk of a large judgment by settling within the limits of the policy, regardless of the merits of the claim, would compel him, were he in charge of settlement negotiations, to accept the offer. The insurer's interests, on the other hand, are prompted by its own evaluation of the liability aspects of the litigation and a desire not to expose itself to payments which do not adequately reflect the dangers that might be involved in pursuing the case to trial. When the settlement offer approaches policy limits, the insurer has a great deal less to risk from going to trial than does the insured, because the extent of its potential liability is fixed.

Notwithstanding that the typical liability insurance policy completely subordinates the insured's interests to those of the insurer by a clause giving the insurer full settlement rights, the insurer has a duty to consider the interests of the insured in all settlement negotiations. Whether the conduct of the insurer is measured by good faith or ordinary care, the real question is the degree of consideration which an insurer must give to those interests of the insured which conflict with its own. Although the decisions run the gamut from the extreme, that the insurer is entitled to regard its own interests as paramount, to the opposite, that the insured's interest must be given priority (Anno. 40 A. L. R. 2d 168 § 5), we are inclined to the view that the insurer may properly give consideration to its own interests, but it must also give at least equal consideration to the interests of the insured.

The rule of equal consideration is expressed in reference to the requirement of good faith in *American Fidelity & Casualty Co. v. G. A. Nichols Co.*, 173 F. 2d 830 (10th Cir. 1949):

"When a liability insurance company by the terms of its policy obtains from the insured a power, irrevocable during the continuance of its liability under the policy, to determine whether an offer of compromise of a claim shall be accepted or rejected, it creates a fiduciary relationship between it and the insured with the resulting duties that grow out of such a relationship. Under

policies like those here involved, the insurer and the insured owe to each other the duty to exercise the utmost good faith. While the insurance company, in determining whether to accept or reject an offer of compromise, may properly give consideration to its own interests, it must, in good faith, give at least equal consideration to the interests of the insured and if it fails so to do it acts in bad faith." (p. 832.)

Similar expressions may be found in numerous cases cited in Later Case Service to Anno. 40 A. L. R. 2d 168 § 5, including *Comunale v. Traders & General Ins. Co.*, 50 Cal. 2d 654, 328 P. 2d 198, 68 A. L. R. 2d 883; *General Accident Fire & Life Assur. Corp. v. Little*, 103 Ariz. 435, 443 P. 2d 690, *United States Fidelity and Guaranty Co. v. Lembke*, supra, applying Colorado law; *Moore v. United States Fidelity & Guaranty Company*, 325 F. 2d 972 (10th Cir. 1963), applying Oklahoma law; and *Prickett v. Hawkeye-Security Insurance Company*, 282 F. 2d 294 (10th Cir. 1960).

As Professor Keeton suggests, equal consideration of the conflicting interests of the company and the insured means consideration of each portion of the total risk without regard to who is bearing that portion of the risk. Stated differently, it means consideration of the risk as a unit without regard to who is bearing each portion of the risk. This undoubtedly is the meaning intended by courts which have said the insurer must accord the interests of its insured the same faithful consideration it gives its own interests, and that the fairest method of balancing the interests is for the insurer to treat the claim as if it alone were liable for the entire amount. (*American Fidelity & Cas. Co. v. L. C. Jones Trucking Co.*, [Okla.], 321 P. 2d 685; *Kuzmanich v. United Fire and Casualty*, 242 Ore. 529, 410 P. 2d 812; *Cowden v. Aetna Cas. & Surety Co.*, 389 Pa. 459, 134 A. 2d 223; *Bell v. Commercial Insurance Co. of Newark, N. J.*, 280 F. 2d 514 [3d Cir. 1960], applying Pennsylvania law.)

A statement of the Arizona court in *General Accident Fire & Life Assur. Corp. v. Little*, supra, supports our conclusion as to the proper application of the equal consideration doctrine:

". . . the evaluation of a case should not be determined by looking to the policy limits. When an insurance company evaluates a claim without looking to the policy limits and as though it alone would be responsible for the payment of any judgment rendered on that claim it views that claim objectively, and in doing so renders 'equal consideration' to the interests of itself and the insured. (Citing cases.)" (p. .)

The result is that under the negligence test the insurer must conduct itself with that degree of care which would be used by

an ordinarily prudent person in the management of his own business, with no policy limits applicable to the claim. Likewise, under the good faith test, the insurer must in good faith view the situation as it would if there were no applicable policy limits. (Keeton, *Liability Insurance and Responsibility For Settlement*, 67 Harv. L. Rev. 1136 at 1147-1148.)

In respect to what particular acts, conduct or circumstances are sufficient to charge the insurer with liability to the insured because of the failure of the insurer to accept an offer of compromise, much the same factors are generally relied upon in those cases finding a breach of good faith as in those finding negligence on the part of the insurer. (7 Am. Jur. 2d, Automobile Insurance § 157; Anno. 40 A. L. R. 2d 168 §§ 10, 11; 7A Appelman, Insurance Law and Practice § 4712; 14 Couch on Insurance 2d § 51:139.) While negligence has been used by some courts to mean the same thing that other courts have designated as bad faith, it would appear that the two rules have tended to merge. In the final analysis, the question of liability depends upon the circumstances of the particular case and must be determined by taking into account the various factors present, rather than on the basis of any general statement or definition.

In deciding whether the insurer's refusal to settle constituted a breach of its duty to exercise good faith, the California court, which, incidentally, recognizes the "equality of consideration" doctrine, said in *Brown v. Guarantee Ins. Co.*, supra:

". . . the following factors should be considered: [1] the strength of the injured claimant's case on the issues of liability and damages; [2] attempts by the insurer to induce the insured to contribute to a settlement; [3] failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; [4] the insurer's rejection of advice of its own attorney or agent; [5] failure of the insurer to inform the insured of a compromise offer; [6] the amount of financial risk to which each party is exposed in the event of a refusal to settle; [7] the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and [8] any other factors tending to establish or negate bad faith on the part of the insurer." (p. 689.)

Several of the factors enumerated by the California court are not in issue here. For example, there was never any discussion about the defendant-insured making any contributions toward a settlement; there is nothing in the record to indicate the insurance company rejected Mr. Hampton's advice; no contention is made that the insurer failed to keep the insured informed about any settlement

offers; nor is it claimed the insurer rejected an offer because the insured misled it as to the facts.

Appellants' argument that the insurer acted negligently and in bad faith in refusing to settle the case within policy limits centers on three factors: (1) failure of the company to inform the defendant about certain matters, such as the medical reports concerning plaintiff's alleged injuries, the case was one of virtually absolute liability, trial counsel's plan to admit liability during final argument, and steps and procedures the defendant could take for his own protection; (2) the company's refusal to settle, although it realized this was a case of absolute liability; and (3) the proposition that by rejecting the $23,500 offer, the company was gambling with only $1,500 of its own money as against over $60,000 of the insured's.

The thrust of appellants' argument relating to the insured being adequately informed suggests that he in some way was misled by lack of known information in the hands of the insurer pertaining to issues of liability and the extent of plaintiff's claimed injuries. A duty is imposed on the company to communicate to the insured the results of any investigation indicating liability in excess of policy limits and any offers of settlement which have been made, so that he may take proper steps to protect his own interests. (*Davy v. Public National Ins. Co.*, 5 Cal. Rptr. 488, 181 Cal. App. 2d 387.) The record discloses no evidence indicating the insurance company failed to make a reasonably adequate investigation as to the liability question and the nature and extent of plaintiff's injuries. Hampton testified he discussed the contents of plaintiff's medical reports with the insured. While it is true counsel did not see fit to have the plaintiff examined, and did not offer any medical testimony to rebut that of plaintiff, we are unable to say that this in itself constituted bad faith or negligence within the facts and circumstances of the entire case. Hampton apparently had a reasonable basis in exercising his judgment that even if plaintiff's injuries were as claimed, a verdict in excess of policy limits was extremely unlikely. Furthermore, it cannot be said the insured labored under any delusion about plaintiff's claimed injuries.

In respect to steps the insured could take to protect his interests, Hampton informed him at the inception of the case he could employ independent counsel. Moreover, insured was repeatedly advised throughout the case he would be liable for any judgment in excess

of $25,000. Despite this knowledge, the insured made no attempt to obtain other counsel.

We need not labor the point that the case was to be gauged as one of absolute liability, and that the insured was misled into thinking otherwise. Hampton made absolutely clear to the insured the practical difficulties involved with the defense of contributory negligence because of plaintiff's alleged loss of memory and the lack of eyewitnesses to the accident. We might add that as matters developed at trial, we think Hampton was justified in admitting liability to the jury as part of his trial strategy. The insured was told of the weakness of the defense, and the trial tactic later employed was the subject of the luncheon conversation between Hampton and the insured after plaintiff had rested his case. An attorney must be given considerable leeway in trying a lawsuit, and ordinarily the matter of trial strategy must be left in his hands rather than in the hands of his client. Especially where the evidence negativing liability is weak, as apparently it was here, the admission of liability may tend to work psychologically in favor of the defense in relation to the amount of recovery.

Appellants' complaints discussed thus far go more to counsel's conduct of the defense, which we have said may be measured by the strict negligence standard. (*Anderson v. Surety Co.*, supra.) We agree with the trial judge's comment at the conclusion of the garnishment hearing that:

". . . I have seen nothing to indicate Mr. Hampton . . . was not completely fair and open in advising Mr. Nuss. . . .

". . . there is no evidence to indicate that this matter was handled with less ability, less judgment, than it would have been handled by the ordinary practitioner in this area."

This brings us to the rejection of the settlement offer for $23,500, which was $1,500 less than the limits of the policy. As we have indicated, the amount of financial risk to which each party is exposed in the event of a refusal to settle is a relevant factor to be considered in determining whether the insurer is liable for the entire judgment. The strength of plaintiff's case must be gauged as it appeared at the time the offer was refused. As all can now see through hindsight, it would have been better for both the insured and the insurer to have accepted the offer. In *Ferris v. Employers Mutual Cas. Co.*, 255 Iowa 511, 112 N. W. 2d 263, it was stated:

". . . We may not measure the reasonableness of the offer by the ultimate result of the litigation; it must be considered in the light of the case as it fairly appeared to the insurer and its authorized agents and attorneys at the time the offer was made. . . ." (p. 523.)

The value of an unlitigated claim must be determined on its own apparent merits, or lack of them, the possibility of liability being established, and on the injuries and their extent being proven. (*General Accident Fire & Life Assur. Corp. v. Little*, supra.)

Even if we assume Mr. Hampton thought there was absolute liability, both he and the insured were of the opinion that plaintiff could not recover $23,500 if the case were tried. In fact, Mr. Hampton thought a verdict would be somewhere between $10,000 and $20,000. Of course, any evaluation of the claim by the insurer and its representatives must have been objectively made as though it alone would be responsible for the payment of any judgment rendered. The company, pursuant to Hampton's recommendation, had authorized a settlement figure of $10,000. Upon the basis of the record it does not appear this was a case where the insurer could reasonably anticipate a verdict "greatly in excess of policy limits," although a defendant's verdict on the issue of liability may have been doubtful. (*Jessen v. O'Daniel*, 210 F. Supp. 317 [D. C. Mont. 1962].)

Whether an insurer in defending a claim and refusing an offer of settlement within policy limits was negligent or acted in bad faith is a question for the trier of fact in each case. (*Southern Farm Bureau Cas. Ins. Co. v. Hardin*, 233 Ark. 1011, 351 S. W. 2d 153.) Where the insurance company acts honestly and in good faith upon adequate information, it should not be held liable because it failed to prophesy the result. (*General Accident Fire & Life Assur. Corp. v. Little*, supra.) Something more than mere error of judgment is necessary to constitute bad faith. The company cannot be required to predict with exactitude the results of a trial; nor does the company act in bad faith where it honestly believes, and has cause to believe, that any probable liability will be less than policy limits. (*Henke v. Iowa Home Mut. Cas. Co.*, supra; *Hodges v. Standard Accident Ins. Co.*, 18 Cal. Rptr. 17, 198 Cal. App. 2d 564; and cases cited in 7A Appleman, Insurance Law and Practice § 4712; 14 Couch 2d on Insurance § 51:139.) Good faith on the part of the insurer implies honesty, fair dealing and adequate information. (*Davy v. Public National Ins. Co.*, supra.)

We have here, at most, an error of judgment on the part of the insurer and its counsel, which, under the facts and circumstances, would warrant the conclusion that the insurer acted in good faith and without negligence. We hold that the trial court's findings to that effect were supported by substantial, competent evidence and were not erroneous as a matter of law.

Appellants' second point relates to the district court's denial of a trial by jury of the issues in the garnishment proceedings. They advance the contention that as between themselves and the garnishee-insurer this was an action for the recovery of money on disputed issues, which normally would be triable by a jury. (See, K. S. A. 60-238.)

A proceeding in garnishment is regarded as a special and extraordinary remedy provided by statute. The statutory provisions governing the exercise of such a proceeding are conclusive and exclusive of all other provisions of the code of civil procedure pertaining to civil actions generally. (*Domann v. Pence,* 185 Kan. 702, 347 P. 2d 373; *Reed v. Ziegler,* 175 Kan. 635, 265 P. 2d 855; *Cole v. Thacker,* 158 Kan. 242, 146 P. 2d 665.) Since garnishment is a statutory remedy, the question of whether or not factual issues arising therein are triable to the court or a jury is controlled by the provisions of the statute. Even where the statutes do not expressly provide for the manner of trial, their provisions as a whole may be looked to for some indication of the proper procedure. (6 Am. Jur. 2d, Attachment and Garnishment § 382; Annos. 88 A. L. R. 1151, 19 A. L. R. 3d 1393.)

A review of our garnishment statutes leads us to the conclusion that they contemplate issues of fact are to be tried to the court, and a jury trial may not be demanded as a matter of right. Specific reference is made to the "court" in at least two instances. K. S. A. 60-718 provides, in part:

". . . If a reply is filed as herein provided, the *court* shall try the issues joined, . . ." (Emphasis added.)

and K. S. A. 60-721 states:

"Upon determination of the issues, either by admissions in the answer or reply, or by default, or by findings of the *court* on controverted issues, judgment shall be entered fixing the rights and liabilities of all the parties in the garnishment proceedings. . . ." (Emphasis added.)

It follows that appellants were not entitled to a jury trial on the factual issues as a matter of right.

Appellants further complain of the district court's refusal to allow them to examine correspondence between the garnishee and its attorney. The request came during cross-examination of Mr. Hampton. The purpose of the request was stated by plaintiff's counsel in the following language:

". . . Now, I think that on many of these items Mr. Hampton has testified to it might be very material to see what the written advices were to the insurance company about the various settlement offers made, about his various conversations with the assured, Mr. Nuss, in this case, and his overall assessment and evaluation of this case. . . ."

Mr. Hampton objected to producing the correspondence but stated he would gladly answer any question pertaining thereto, and in doing so, would refer to any pertinent information contained in the correspondence itself. In making his ruling, the trial judge observed there had been no showing that Hampton was "knowingly or unknowingly" giving false answers to the questions touching the area of inquiry.

The only argument of substance advanced in the appellants' joint brief is to the effect the correspondence was relevant and not privileged as between defendant and garnishee, since Mr. Hampton represented both parties for their mutual benefit. (See, K. S. A. [now K. S. A. 1968 Supp.] 60-426 [b] [5].) The garnishee calls attention to a fact which is borne out by the record: that defendant did not join in the request by plaintiff's counsel to examine the correspondence. Thus, the defendant is in no position to complain of the trial court's ruling. Only the plaintiff, then, may contend the ruling was erroneous; yet he has made no attempt to show that the correspondence was not privileged as to him. Even if we assume, for the sake of argument, that the information was not privileged, plaintiff has failed to show any prejudice resulting from the trial court's ruling. This matter arose as a part of cross-examination of the witness, and the trial court was free to exercise its discretion in determining the extent of such examination. The record discloses the court permitted counsel to conduct a thorough and extensive cross-examination of the witness. Frequent reference was made to the attorney's file, occasionally to the point of the witness reading the correspondence aloud, and it would appear that counsel obtained all the information he was seeking. Under the circumstances, the ruling of the trial court will not be disturbed.

The district court's judgment is affirmed in all respects.