**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 26 2001**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

MICHELLE WILLIAMS,

Plaintiff-Appellant,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,

Defendant-Appellee.

No. 00-3167
(D.C. No. 99-CV-1486-JTM)
(D. Kan.)

---

ORDER AND JUDGMENT*

---

Before **BRISCOE**, **ANDERSON**, and **MURPHY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In this diversity case, plaintiff is appealing the district court's entry of summary judgment in favor of defendant on her claim of negligence and bad faith under Kansas

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

law.[1]  Our jurisdiction arises under 28 U.S.C. § 1291.  We affirm.

I.

Plaintiff was involved in an automobile accident on May 17, 1997, when a car driven by defendant's insured pulled out from a stop sign and collided with the truck in which plaintiff was riding.  Defendant's insured was killed in the accident.  It is undisputed that the accident was caused by the negligence of defendant's insured.  Defendant's policy limits for the accident were $100,000.

Plaintiff complained to her doctor of back pain following the accident. She had no significant complaints about her back in the two years prior to the accident, but had suffered temporary back pain two years prior to the accident and had suffered from a bulging disc in her back eight years prior to the accident.  Dr. James A. Rodgers concluded that plaintiff was suffering from an "internally disrupted disc with an annular tear at L5-S1" dating back to the accident. Aplt. App. at 193.  Upon his recommendation, plaintiff underwent a lumbar laminectomy, bilateral discectomy, interbody fusion, posterolateral fusion, and instrumentation at L5-S1 with pedicle screws and rods on April 22, 1998.  She underwent a second surgery to remove the screws and rods in mid-November.  Records of these medical expenses reflect a total cost of $50,400.

At the time of the accident, plaintiff was employed as an office manager at a gross

---

[1]     The district court granted summary judgment in a published memorandum order dated June 5, 2000.  *See Williams v. American Family Mut. Ins. Co.*, 101 F. Supp. 2d 1337 (D. Kan. 2000).

weekly wage of $340.  Because of her injury, she was unable to work full-time between

May 19, 1997, and July 13, 1998.  She estimated her loss of wages at $30,846.65.  The

record contains an itemized list by plaintiff, but no records from her employer.

Plaintiff and defendant engaged in the following settlement efforts before plaintiff

filed suit:

> • Between June 1998 and January 1999, plaintiff provided defendant with itemized lists of her alleged economic losses.  Plaintiff claimed she had medical expenses in the approximate amount of $50,000-$55,000, lost wages in the approximate amount of $30,000 and other losses in the approximate amount of $13,000, for a total economic loss in the approximate range of $95,000 to $100,000.
> • On September 24, 1998, defendant offered plaintiff $66,000 to settle her claims against its insured.  Plaintiff rejected this offer and demanded the policy limits of $100,000.
> • On January 15, 1999, defendant offered plaintiff $81,000 to settle her claims.  Plaintiff rejected this offer and again demanded policy limits.
> • On February 8, 1999, plaintiff's first attorney, Jack Goree, wrote a letter to defendant offering to settle for policy limits.  In his letter, Goree claimed that plaintiff's "medical specials are now $96,263.15 and there will be a claim for lost wages as well."  Aplt. App. at 116.  In a letter dated February 11, 1999, defendant responded to Goree's letter by requesting that he provide copies of the medical bills which supported the alleged increase in plaintiff's medical expenses.  Defendant also stated that it was unable to offer policy limits and that its offer would stand at $81,000.
> • In a letter dated March 19, 1999, plaintiff's second attorney, William J. Fitzpatrick, made a "final" offer to settle for policy limits.  *Id.* at 120.  Although Fitzpatrick noted defendant's prior letter dated February 11, 1999, he made no reference to defendant's request for additional medical bills.  In a letter dated March 25, 1999, defendant informed Fitzpatrick that its prior offer of $81,000 "still stands" and that it would not offer policy limits "at this time."  *Id.* at 122.

Plaintiff filed suit against the estate of defendant's insured on April 7, 1999, and

defendant subsequently retained counsel to defend the estate.  After reviewing the file and

obtaining authority from defendant to offer policy limits, counsel for the estate sent a letter to Fitzpatrick offering to settle plaintiff's claims for the policy limits of $100,000.[2] The offer was rejected.

Fitzpatrick subsequently proposed that the estate agree to settle plaintiff's claims by entering into a consent judgment in the amount of $350,000. Under the proposed settlement, plaintiff would agree not to execute any portion of the judgment against the estate in exchange for an assignment of the estate's rights under the insurance policy issued by defendant. After obtaining authority from defendant to proceed with the settlement, counsel for the estate agreed to the settlement proposal and a consent judgment in the amount of $350,000 was entered against the estate on September 24, 1999. Following the entry of the consent judgment, defendant paid plaintiff its policy limits of $100,000 but refused to pay the balance of the consent judgment.

In her capacity as the assignee of the insured's estate, plaintiff filed the present diversity action against defendant to recover the $250,000 balance of the consent judgment. Plaintiff claims that defendant was negligent and acted in bad faith in refusing to settle for policy limits prior to the filing of her personal injury action. The district

---

[2] In evaluating plaintiff's claim that defendant was negligent and acted in bad faith in refusing to pay policy limits before she filed suit, it is immaterial that defendant made an offer to settle for policy limits after plaintiff filed suit. *See Smith v. Blackwell*, 791 P.2d 1343, 1347 (Kan. App. 1989) (fact that insurer follows advice of counsel and makes offer for policy limits after suit is filed does not cure a pre-suit failure to offer policy limits).

court granted defendant summary judgment on plaintiff's negligence and bad faith claim. The district court found that defendant did not breach any duty to its insured under Kansas law by refusing to pay plaintiff policy limits prior to April 1999. According to the district court, defendant acted properly because: (1) it made a reasonable request for additional documentation to substantiate the alleged increase in plaintiff's medical expenses, but plaintiff's attorneys failed to respond to the request; and (2) it offered $81,000, or 81% of the policy limits, to settle plaintiff's claims.[3]

## II.

We review the grant of summary judgment de novo, applying the same legal standard as the district court. *Kaul v. Stephan*, 83 F. 3d 1208, 1212 (10th Cir. 1996). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*; *see* Fed. R. Civ. P. 56(c). We view the facts in the light

---

[3]    The district court did not make an express finding that plaintiff precipitously filed suit. This was apparently a factor in the district court's analysis, however, as it noted that "plaintiff did not institute her [personal injury case] because of the statute of limitations. . . ." *Williams,* 101 F. Supp. 2d at 1342. Plaintiff made her initial demand for policy limits in September 1998 and defendant had obtained plaintiff's medical records and general wage loss information by October 1998. Defendant therefore had ample time to investigate plaintiff's claims before she filed suit in April 1999, and this is not a case where plaintiff abruptly broke off settlement negotiations in midstream before defendant was able to evaluate her claim. *See Smith*, 791 P.2d at 1347 (no precipitous filing where insurer had ample time to conduct complete investigation after plaintiff made policy limits offer).

most favorable to the party opposing summary judgment. *Id.*

III.

Under Kansas law, "[a]n insurance company may become liable for an amount in excess of its policy limits if it fails to act in good faith and without negligence when defending and settling claims against its insured." *Glenn v. Fleming*, 799 P.2d 79, 85 (Kan. 1990). "Whether an insurer in defending a claim and refusing an offer of settlement within policy limits was negligent or acted in bad faith is a question for the trier of fact in each case." *Bollinger v. Nuss*, 449 P.2d 502, 514 (Kan. 1969).

The Kansas Supreme Court has recognized an inherent conflict of interest when an insurer is faced with a claim against its insured for an amount in excess of the policy limits:

> When a claim is made against the insured for an amount in excess of the policy coverage, the insurer's obligation to defend creates a conflict of interest on its part. On the one hand, its interests lie in minimizing the amount to be paid; on the other, the insured's interests, which the insurer is supposedly defending, lie in keeping recovery within policy limits, so that he will suffer no personal financial loss. The conflict becomes particularly acute where there is an offer of settlement approximating policy limits. The insured's desire to avoid the risk of a large judgment by settling within the limits of the policy, regardless of the merits of the claim, would compel him, were he in charge of settlement negotiations, to accept the offer. The insurer's interests, on the other hand, are prompted by its own evaluation of the liability aspects of the litigation and a desire not to expose itself to payments which do not adequately reflect the dangers that might be involved in pursuing the case to trial. When the settlement offer approaches policy limits, the insurer has a great deal less to risk from going to trial than does the insured, because the extent of its potential liability is fixed.

*Id.* at 510. To protect insureds from this inherent conflict of interest, the Kansas Supreme

-6-

Court has adopted the "rule of equal consideration," which requires that "[w]hen an insurer determines whether to accept or reject an offer of settlement, it must give at least the same consideration to the interests of its insured as it does to its own interests." *Glenn*, 799 P.2d at 85. "This rule of equal consideration means the claim should be evaluated by the insurer without looking to the policy limits and as though it alone would be responsible for the payment of any judgment rendered on the claim." *Rector v. Husted*, 519 P.2d 634, 641 (Kan. 1974). In following the rule of equal consideration, the insured's ability to pay any judgment in excess of the policy limits is not to be taken into consideration. *See Farmers Ins. Exchange v. Schropp*, 567 P.2d 1359, 1369 (Kan. 1977).

The district court awarded summary judgment to defendant on the claim of bad faith or negligence in refusing to settle because there was no evidence to support that claim. *Williams*, 101 F. Supp. 2d at 1341. The district court found that defendant made a reasonable request for additional documentation to substantiate the alleged increase in medical expenses, and defendant offered $81,000, or 81% of the policy limits, to settle plaintiff's claims.

Plaintiff argues the district court erred because there was evidence to show that defendant acted negligently or in bad faith in failing to settle the case for the policy limits prior to the filing of this action. In evaluating plaintiff's claim, we consider the following factors:

> (1) the strength of the injured claimant's case on the issues of liability and damages; (2) attempts by the insurer to induce the insured to contribute to a

settlement; (3) failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; (4) the insurer's rejection of advice of its own attorney or agent; (5) failure of the insurer to inform the insured of a compromise offer; (6) the amount of financial risk to which each party is exposed in the event of a refusal to settle; (7) the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and (8) any other factors tending to establish or negate bad faith on the part of the insurer.

*Bollinger*, 449 P.2d at 512. These factors are evaluated as the facts looked to the insurer at the time it made the decision not to settle. *Glenn*, 799 P.2d at 85. "Where the insurance company acts honestly and in good faith upon adequate information, it should not be held liable because it failed to prophesy the result. Something more than mere error of judgment is necessary to constitute bad faith." *Id.*

There is no dispute that the insured was completely liable so plaintiff's case is strong in terms of liability. However, her damages claim is strong only with respect to those expenses for which there is evidence. The evidence provided to defendant showed that plaintiff's medical expenses totaled only $50,400. Plaintiff failed to provide additional documentation to defendant. Plaintiff's itemized list of lost wages totaled $30,846.65 and there is no corroborating evidence from her employer. Defendant suspected plaintiff's lost wages amount was inflated because her weekly salary was $340. There was no evidence regarding future lost wages or pain and suffering. Therefore, defendant's conclusion that damages of $81,000 were owed was consistent with the evidence at the time defendant refused plaintiff's offer to settle for the policy limits.

There is no evidence that defendant sought to induce its insured to contribute to a

settlement. As the insured was without assets, defendant was not required to seek such contribution. There is also no evidence that the insured induced defendant not to accept the settlement offer.

Plaintiff argues that defendant failed to investigate her medical expenses and wages and arbitrarily estimated her lost wages at $6,000. Defendant relied on the medical records provided by plaintiff. With regard to lost wages, defendant multiplied plaintiff's weekly wage by the number of weeks it understood that she missed work. That is not an arbitrary assessment of lost wages. Further, even if defendant accepted the potentially inflated amount of $30,846.65, its offer of $81,000 was reasonable.

There is no evidence that defendant rejected any advice of its agent or counsel prior to this action being filed. The fact that defendant later followed the advice of counsel in offering to settle for policy limits is irrelevant to this analysis as that advice came after this action was filed.

Plaintiff argues that defendant failed to inform the deceased's family about offers of settlement. Defendant argues it was not required to inform the estate because the estate was insolvent. While it is true that defendant is not to consider the estate's insolvency in evaluating whether to accept settlement within the policy, *see Farmers Ins. Exchange*, 567 P.2d at 1369, plaintiff cites no authority requiring the insurer to inform an insolvent estate about a settlement offer. The purpose of requiring the insurer to inform the insured about settlement offers and the insured's potential liability in excess of the

policy limits is so that the insured may take proper steps to protect his own interests. *Levier v. Koppenheffer*, 879 P.2d 40, 46 (Kan. App. 1994). Here, where the insured is deceased and her estate is insolvent, there are no steps that the insured needs to take to protect her interest so there was no need for defendant to inform the estate about settlement offers.

In considering the financial risk involved, defendant was exposed for $19,000 (the difference between its offer and the maximum of the policy). The estate was not exposed to any risk because it was insolvent. Additionally, there was no evidence presented to defendant to suggest that plaintiff could prove damages beyond the policy limits so defendant reasonably could conclude the estate was not at risk, even if it had money.

Finally, plaintiff argues the other factors showing bad faith were defendant's awareness that plaintiff lacked an attorney and its tendency to keep track of the statute of limitations. There is no indication that defendant took advantage of the fact that plaintiff had no attorney. Defendant had a legal obligation to keep track of the statute of limitations. Defendant argues that Goree's misstatement regarding the amount of plaintiff's medical specials claim is a factor tending to negate bad faith on the part of defendant. However, while Goree's statement might suggest bad faith on his part, it does not affect whether defendant acted in bad faith.

Consideration of the *Bollinger* factors shows the district court did not err in granting summary judgment to defendant. "The company cannot be required to predict

with exactitude the results of a trial; nor does the company act in bad faith where it honestly believes, and has cause to believe, that any probable liability will be less than policy limits." *Bollinger*, 449 P.2d at 514.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge
