No. 46,953

Gregory Scott Castoreno, a minor, by his mother, Ethel Castoreno, Daniel Hernandez, Sr. and Francisca Hernandez, *Appellants*, v. The Western Indemnity Company, Inc., and John C. Rubow, Administrator of the Estate of Michial Wayne Lohse, deceased, *Appellees*.

(515 P. 2d 789)

Opinion filed November 3, 1973.

*Robert W. Kaplan*, of Kaplan, McMillan and Anderson, of Wichita, argued the cause, and *D. Keith Anderson*, of the same firm, was with him on the brief for the appellants.

*Richard C. Hite*, of Kahrs, Nelson, Fanning, Hite and Kellogg, of Wichita, argued the cause, and *Larry A. Withers*, of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

HARMAN, C.: This is an action by two sets of plaintiffs for recovery of money from a liability insurer and the administrator of an estate based upon alleged improper handling of multiple claims arising out of an automobile collision. The trial court dismissed the

action as to the administrator and later entered summary judgment in favor of the insurance company. Plaintiffs bring the matter here.

The two claims in this case arose out of the same collision involved in *In re Estate of Lohse v. Rubow*, 207 Kan. 36, 483 P. 2d 1048.

On June 3, 1967, in Labette county, Kansas, an automobile driven by Michial Wayne Lohse collided headon with one driven by Horace Martinez. Indications were that the Lohse vehicle was at least partly on the wrong side of the highway. There was some indication the Martinez car may also have been partly on the wrong side of the road. Both drivers were killed. Also killed were Stanley Clark, a passenger in Lohse's vehicle, and Ramon Castoreno and James Hernandez, passengers in the Martinez vehicle. Jesse Martinez, a passenger in the automobile driven by Horace Martinez, was injured.

The Lohse vehicle was insured by Western Indemnity Co., Inc. The policy provided liability coverage for bodily injury and death with limits of $10,000 per person and $20,000 per accident. On September 27, 1967, in the probate court of Neosho county, Kansas, John C. Rubow, a Chanute attorney, was appointed administrator of the Lohse estate. Other than the insurance policy the assets of the estate amounted to about $3,600.

After his appointment Mr. Rubow made an investigation of the collision and was aware of the possibility of the assertion of multiple claims against the limited assets of the estate. The insurer, Western Indemnity, was also aware shortly after the collision of that possibility.

On October 19, 1967, Jesse Martinez filed a claim against the Lohse estate for $22,861.36 for injuries he sustained in the collision. On November 16, 1967, the mother of Horace Martinez filed a claim of $35,876.85 against the estate for the wrongful death of her son. These claimants were represented by Charles Forsythe, an Erie attorney. The insurer employed the firm of Henshall and Pennington of Chanute to act as attorney for the administrator in defense of these claims. The claims were transferred to the district court of Neosho county for trial.

Mr. Charles Henshall and Mr. Rubow discussed the potential liability of the Lohse estate and both were aware that, regardless of how the claims were handled, the insurance coverage might not be adequate to protect the estate. They concurred in the belief that

the best alternative, in order to protect and preserve the assets of the estate, would be to take no action to notify other potential claimants.

The administrator made demand upon the insurer to settle the personal injury claim of Jesse Martinez, in response to which settlement was made, the insurer paying $9,500 to Jesse Martinez on February 15, 1968. The administrator rejected a settlement offer of $9,500 by the plaintiff in action for the wrongful death of Horace Martinez because of the possibility of a finding that Horace might have been contributorially negligent.

On April 15, 1968, a son of Ramon Castoreno filed a claim for the wrongful death of his father. This plaintiff was represented by his present counsel. The insurer again hired the same law firm to defend on behalf of the estate. On April 23, 1968, this firm moved to consolidate for trial the two pending wrongful death actions. This motion was denied May 7, 1968. Upon the same day the administrator and the insurer orally moved that further proceedings in the Martinez death claim be stayed until after June 29, 1968, the date on which the nonclaim statute would bar any additional claims against the Lohse estate. This motion was overruled and the court set the Martinez case for trial on May 20, 1968. It appears that both of the foregoing motions were resisted by counsel prosecuting the Martinez claim. This action proceeded as scheduled and on May 22, 1968, a jury rendered a verdict against the estate for $24,584.85, upon which judgment was entered. On June 4, 1968, the insurer paid $10,000 to apply on that judgment. (The case of *In re Estate of Lohse v. Rubow,* supra, simply reflects further efforts to obtain more money in satisfaction of the Martinez judgment.)

On May 31, 1968, the plaintiff in the Castoreno claim advised the administrator and the insurer he would accept in settlement of his claim the limits of the Lohse policy, meaning a pro rata share of the entire amount of the policy. On June 6, 1968, the insurer responded that the limits of the policy had been exhausted except for $500, which amount was offered in settlement and rejected.

On June 26, 1968, the parents of James Hernandez filed an action against the estate for the wrongful death of their son. This suit was filed by counsel from Mission, Kansas. Until the times of their filings the administrator did not know that a claim would be made for either the Castoreno or the Hernandez death. No claim was ever made against the estate as a result of the Stanley Clark death.

On August 8, 1968, the insurance company advised the Hernandez plaintiffs that the Lohse coverage had been exhausted except for $500, which amount it offered to divide between them and the Castoreno claimant. This offer was rejected and settlement demand was made for $9,500.

The Castoreno and Hernandez actions were consolidated and tried to a jury in the district court of Neosho county with the result judgments were rendered January 8, 1970, against the estate upon the Castoreno claim for $10,000 and upon the Hernandez claim for $5,869. On January 30, 1970, the insurer paid $500 into that court toward satisfaction of the two judgments.

Thereafter the plaintiffs Castoreno and Hernandez instituted this action in Sedgwick county district court. The administrative judge of that court (division No. 2) dismissed the action as against the administrator. Later, after assignment of the case to the judge of division No. 8, summary judgment was entered for the insurer. Plaintiffs have appealed from those orders.

The appeal as against the administrator may be quickly determined. For present purposes actions against executors and administrators may be classified into two groups, namely, those where suit is brought against them in a representative capacity and those brought against them in an individual capacity. Appellants' actions were brought against Rubow not individually but specifically "in his fiduciary capacity as the Administrator of the Estate of Michial Wayne Lohse, deceased". The basis of liability asserted was essentially negligence and bad faith in his handling of the claims. The rule is, a personal representative of an estate generally must be sued in his individual capacity for torts committed by him while acting in his representative capacity (34 C. J. S., Executors and Administrators, § 716 a.; 31 Am. Jur. 2d, Executors and Administrators, § 730). Appellants have already obtained judgments against the administrator in his representative capacity in the Neosho county district court for the same amounts sought in this action, which in effect is collateral to that in Neosho county. Hence the trial court properly dismissed this action as to the administrator.

In rendering summary judgment against appellants and in favor of appellee Western the trial court had before it appellants' lengthy petition reciting in considerable detail their version of events, appellee's answer admitting virtually all the evidentiary facts pleaded by appellants, a pretrial order containing an agreement

as to certain facts as well as the issues of law to be decided by the court, the files in previous court proceedings involving the collision, several exhibits, including correspondence between some of the parties, and an affidavit of the administrator as to his activities and position in the case. From all this it appears there is no dispute as to any relevant fact in the case and, indeed no complaint that summary judgment was rendered prematurely has been or is now advanced. For all practical purposes the dispute has resolved itself into one of law.

In asserting error in the rendition of summary judgment against them appellants advance several theories upon which they say they are entitled to recover: First, on the basis of appellee's negligence and bad faith in making payments as it did without locating or attempting to locate and settling with or attempting to settle with appellants; second, the policy in question constituted a special asset of the estate that should have been paid to the estate for the benefit of all potential claimants in the automobile collision; third, appellants are third party beneficiaries of the insurance contract; and, fourth, on the basis of appellants' offer to settle within policy limits, or the "excess verdict" theory.

In support of their theories appellants primarily rely upon two cases. The first case cited is *Bollinger v. Nuss,* 202 Kan. 326, 449 P. 2d 502. There, as a result of a pedestrian having been struck by an automobile, the liability insurer was confronted only with a single claim. After filing suit against the insured for more than the amount of the liability policy the injured claimant offered to settle for slightly less than the policy limits. The insurer, with the consent of the insured after he had been fully apprised of the situation, declined to accept the settlement offer. Upon trial judgment in excess of policy limits was rendered. The injured party then attempted by garnishment against the insurer to collect that part of the judgment which exceeded the policy limits. Our opinion discussed the two theories upon which an insurer has been held accountable for more than the face amount of its policy —acting either negligently or in bad faith in its handling of a settlement offer. Multiple claimants were not involved as in the case at bar and the *Bollinger* holding is inapposite to any issue here, except it does emphasize the rule that a liability insurer owes a duty to the insured to act in good faith and without negligence in defending and settling claims against the insured.

The other case cited by appellants is *Bennett v. Conrady*, 180 Kan. 485, 305 P. 2d 823. There five passengers in a station wagon were injured when that vehicle collided with a truck upon which $5,000-$10,000 liability insurance was carried. The insurance company notified all parties of its maximum $10,000 coverage and offered to pay that amount in settlement of all claims for personal injuries arising from the collision provided the claimants could agree upon division of that sum among them. The five passengers each filed separate actions against the truck driver. Two of the cases were consolidated in a pretrial proceeding but the other three plaintiffs refused to consolidate. Claimants in the two consolidated cases (Fisher and Graves) offered to settle their cases for $4,000 each. This offer was accepted, the insurance carrier paid those amounts and those two actions were dismissed with prejudice. Eventually the three remaining claims were consolidated and judgments were taken therein totaling more than $19,000. The insurance carrier then entered its appearance in the case and asked directions as to how the remaining $2,000 of its policy limits should be distributed. The three remaining plaintiffs took issue with the carrier's position, asserting they were entitled to distribution of the entire $10,000 insurance coverage. Plaintiffs contended the payments previously made were made without legal or contractual authority, were not binding on them and further that the insurance carrier was not entitled to any credit therefor because (1) such settlements constituted equitable preference and were contrary to public policy, (2) there was no authorization under the policy to so settle and if such authority existed the terms were not complied with, (3) such settlements were not made in good faith, (4) there was no legal authority to settle less than all of the multiple claims or to take into account against plaintiffs' judgments compromised claims not reduced to judgment because judgments have priority over other claims not reduced to judgment, and (5) such settlements were made to defeat plaintiffs, were excessive and disproportionate in view of the policy limits.

The plaintiffs also contended they should have had advance notice of the proposed settlements made with the other two claimants. The trial court held the insurance carrier was liable only for the $2,000, plus interest and costs. Plaintiffs appealed. This court summarized the various specifications of error by saying the concrete question involved was whether the trial court erred in

giving credit to the insurance carrier for the $8,000 paid out in settlement of the claims of Fisher and Graves or, stated another way, was it error to conclude that only $2,000 should be distributed toward satisfaction of plaintiffs' judgments?

This court pointed out that policy provisos not only obligated the insurance carrier to defend any suit against the insured but also authorized it to make settlement of any claim as it deemed expedient. *Bennett* enunciated further rules respecting settlements:

"The insurer of a liability or an indemnity insurance policy shall be liable for the full amount of its insured's resulting loss, even if that amount exceeds the limits of the policy, for negligence or bad faith in defending or settling actions against such insured.

"In the settlement of claims an insurance company shall be held to that degree of care and diligence which a man of ordinary care and prudence shall exercise in the management of his own business.

"Because of possible conflict of interest between an insurance company and its insured in the defense or settlement of claims against the insured there is a mutual fiduciary relationship whereby each owes the other the duty to exercise reasonable care in conducting such defense or settlement." (Syl. ¶¶ 3, 4, & 5.)

Applying the foregoing the court found that "the insurer was exercising absolute good faith in making the settlements and the insured cannot now be heard to complain." (p. 491.)

The court had this to say respecting the position of the injured plaintiffs:

"This brings us to another phase of the instant case and that relates to the position occupied by the injured persons and their multiple claims which far exceed the limits of the policy. Their rights would be best protected, of course, if no settlements were allowed. This subject was discussed in a recent article in 70 Harvard Law Review 27, *et seq.*, from which will be noted the statement that in all probability any effort to term settlements preferential so as to defeat them or cause their delay would create more problems and might result in the insurer and the courts giving more credence to the interest of the injured than they give to the insured. This would indeed be a step toward doing violence to and would be contrary to public policy because settlements are universally recognized and encouraged by courts as being in furtherance of public policy. Another article giving a good discussion of settlements, their relationship to public policy, and the authorities thereon is to be found in 19 Insurance Counsel Journal 419.

"Any effort to restrain or abolish reasonably executed compromises or settlements of this type would make the rights of the injured parties paramount under a situation such as we have before us and would be contrary to the well-established rule that the injured parties have only those rights possessed by the insured had he paid the claims or judgments and the insurer is entitled to assert any defense against the injured persons which it could assert against the insured.

(46 C. J. S., Insurance, § 1191 [3], p. 112.) The insurer certainly could not be enjoined by plaintiffs from settling with other persons injured in the same accident and thereby exhausting the fund to the exclusion of plaintiffs. (46 C. J. S., Insurance, § 1191 [9].) If we were to follow plaintiffs' theory it could lead us to a result where one injured person could enjoin the compromise and settlement by an insurer of the claim of another injured person in the same accident. This would be in direct conflict with what has just been stated. The better rule is that where, as here, an insurer settles two of five claims arising out of an automobile accident, such settlement is not contrary to public policy as against the remaining three claimants who reduced their claims to judgment. (8 Appleman on Insurance Law and Practice § 4711.)

"We have not treated each contention of plaintiffs separately but in general they have all been answered herein. We conclude that the insurer did what it was bound to do under the policy and that the trial court was correct in its order both as to the amount of $2,000 to be paid in for pro rata division among the plaintiffs on their judgments and as to the amount of interest due thereon since the $2,000 was all that remained in the hands of the insurer under its policy limits after the compromise and settlement of the first two claims." (pp. 491, 492.)

Thus it appears the principles in *Bennett* are actually adverse to the various theories advanced by appellants here. The *Bennett* holding is in accord with the jurisprudence of other states. In an annotation entitled "Basis and manner of distribution among multiple claimants of proceeds of liability insurance policy inadequate to pay all claims in full", 70 ALR 2d 416, the following summation appears:

"Where several claims arising from an insured event have been joined in one suit against an insurer whose maximum liability under its policy is inadequate to pay in full the amounts deserved by the claimants, courts have held that the proceeds were to be distributed on a prorata basis in accordance with the amount of damage suffered by each claimant.

"But where judgments were obtained or were about to be obtained against an insured in different actions, the courts, in a majority of the cases, have held that the proceeds were to be distributed on a first-come-first-served basis according to priority of judgment. . . .

"Finally, it has been generally held that a liability insurer can settle with some claimants although to do so may exhaust the insurance fund or so deplete it that a subsequent judgment creditor is unable to collect his judgment in full from the remaining proceeds." (p. 417.)

Rules to like effect may be found in 15 Couch on Insurance 2d, § 56.32.

The record on appeal does not contain the policy in question but according to unrefuted statements in appellees' brief it is a standard liability policy obligating the insurer to defend its in-

sured and to pay, upon insured's compliance with policy provisos, the amount of that insured's obligation after it has been finally determined either by judgment against the insured upon trial, or by written agreement of the insured, the claimant and the company. As in *Bennett,* the policy authorized the insurer to make settlements of claims against its insured.

We think *Bennett* so sufficiently indicates the trial court ruled properly in sustaining the insurer's motion for summary judgment that little more be said.

It is not contended the policy in question requires, authorizes or even contemplates that any payment under the liability coverage shall be made to the insured and we are aware of no law to that effect. Even though a liability insurance policy constitutes such an estate of a nonresident insured decedent as to justify the issuance of letters of administration and appointment of an administrator of the estate (*In re Estate of Preston,* 193 Kan. 145, 392 P. 2d 922), that rule is of no aid to appellants here because the rationale is that it is the deceased insured's *potential right of exoneration* under an insurance policy which constitutes the property or estate of the decedent justifying such grant of administration (see anno. 67 ALR 2d 936).

Here the insurer dealt with each claim successively as occasion arose. Immediately following the filing of the third claim (Castoreno) it attempted to consolidate that claim with the pending Martinez death claim and stay all proceedings until after the nonclaim statute had run. It was prevented from effecting these actions only by discretionary rulings of the Neosho county trial court made at the behest of the Martinez claimant. As already indicated, appellants' only charges of negligence and bad faith derive from the fact insurer's actions had the effect of depleting the policy proceeds so that their judgments could not be subsequently satisfied to the extent allowable to one claimant. Such actions as here revealed constitute neither negligence nor bad faith. Nor are the rights of appellants enlarged by their assumption of the label of third party beneficiaries of an insurance contract for, as already quoted in *Bennett v. Conrady,* supra, "the injured parties have only those rights possessed by the insured had he paid the claims or judgments". (p. 491.)

Our holding is that a liability insurer may in good faith settle part of multiple claims arising from the negligence of its insured

even though such settlements deplete or exhaust the policy limits of liability so that the remaining claimants have little or no recourse against the insurer.

The judgment is affirmed.

APPROVED BY THE COURT.

PRAGER, J., not participating.