The HARTFORD CASUALTY INSURANCE COMPANY, a body corporate

v.

Algie DODD et al.

Civ. No. T–76–141.

United States District Court,
D. Maryland.

Aug. 4, 1976.

Samuel S. Smalkin, Baltimore, Md., for plaintiff.

Bernard Brager, Baltimore, Md., for defendants.

THOMSEN, Senior District Judge.

This interpleader action and the counterclaim filed therein arise out of a Maryland automobile accident in May 1973 wherein an automobile owned by Betty Jean Davis and driven by her husband, Willie Davis, in which Betty Jean Davis, Algie Dodd, Cora Lockwood, Hilda Matthews, Leonard Deedon and Theodore Kennedy were riding, collided with an automobile owned and operated by Ronald Meekins, in which Tyrone A. Chester and E. Tilghman were riding. Willie Davis and Kennedy died as a result of the accident. Betty Davis, Dodd, Lock-wood, Matthews and Deedon (in the Davis car) were injured, as were Meekins and Chester (in the Meekins car). It is agreed that the accident was caused by negligence on the part of Willie Davis. No claim of negligence on the part of Meekins has been made.

The Hartford Casualty Insurance Company had issued to Betty Jean Davis, in Delaware, a policy of automobile liability insurance, with limits for bodily injury liability of $10,000 each person, $20,000 each accident, and for property damage liability of $5,000 each accident. In compliance with a requirement of Delaware law, 21 Del. § 2118(a)(2), effective January 1, 1972, the policy included a provision for Personal Injury Protection (PIP) benefits (also with 10/20 limits), which were available to the passengers in the Davis car, but not to the driver or passengers in the Meekins car. The Hartford soon learned that Willie Davis and Kennedy had died of their injuries, that Betty Jean Davis, Dodd and Matthews (passengers in the Davis car) and Meekins (the driver of the other car) were seriously injured, with large medical bills and income loss, incurred and in prospect, and that Deedon and Lockwood (passengers in the Davis car) and Chester (a passenger in the Meekins car) were also injured, although with less medical expenses and income loss. Dodd, Matthews, Deedon and Lockwood engaged an attorney, who notified Betty Jean Davis of his representation in June 1973, talked to a claims representative of the Hartford, sent the Hartford photocopies of some medical reports and bills in July 1973, and said he would furnish further reports and bills as received, but filed no application for PIP benefits. Thereafter, with knowledge of the foregoing facts and despite the relatively low policy limits, the Hartford paid to its policyholder (Betty Jean Davis) under the PIP provisions (1) the funeral bill of Willie Davis ($1,133.50), without waiting for an administrator of his estate to be appointed, and (2) over a period of six months beginning in September 1973 paid her $1,473.60 for medical expenses, $162 for household expenses and $6,143.57

for "lost wages".[1] Betty Jean Davis paid the funeral director $250 and kept the balance of the $1133.50 herself. The Hartford made no payments to anyone else under the PIP provisions except the administrator of Kennedy (a passenger in the Davis car), to whom in 1975 the Hartford paid $1,903.60 (about half of Kennedy's medical and funeral expenses) under the PIP provisions and $467.95 under the liability provisions of the Davis policy, in full settlement of all of his claims.

In August 1974 the Hartford settled with Meekins (who was very seriously injured and had medical expenses of more than $6,600), paying him $10,000, the applicable limit for one person under the ordinary liability provisions of the policy, and in October 1974 settled with Chester for $327.50, in each instance taking appropriate releases protecting its insured from larger claims. The Hartford made no settlement with and made no payments to Matthews, Dodd, Deedon or Lockwood, who were represented by counsel, although offers of settlement were made to them on August 27, 1974. Thereafter, Dodd, Deedon and Lockwood sued the administrator of the Estate of Willie Davis in this court; Matthews sued the administrator in the Circuit Court for Talbot County, Maryland, and all four of them sued the Hartford in the Superior Court for Newcastle County, Delaware, claiming that the payments made by the Hartford had been improper.

In January 1976 the Hartford filed the instant action under the Federal Interpleader Act, 28 U.S.C. 1335(a), and paid into the registry of this court the sum of $18,715.78. It alleges that $9,532.05 of that amount represents the remaining coverage for payment of claims under the ordinary liability provisions of its policy, and that $9,183.73 represents the remaining coverage for the payment of PIP benefits. It seeks a judgment releasing it from all further liability under its policy.

Dodd, Lockwood, Matthews and Deedon have answered the complaint and filed a counterclaim, contending that the conduct of the Hartford in making the payments set out above constituted a violation of the policy and of the Delaware Code, entitling them to recover from the Hartford a larger amount than was paid into court.

## I. Liability Provisions

■ A liability insurer may settle claims in good faith with some claimants, even if such settlements reduce the amount available to others. There is ordinarily no requirement that the insurer wait until all claims have been presented before it deals with any claimant. *State Farm Mutual Auto. Ins. Co. v. Hamilton,* 326 F.Supp. 931, 934 (D.S.C.1971, Simons, J.); *Castoreno v. Western Indemnity Co.,* 213 Kan. 103, 515 P.2d 789 (1973); *Richard v. Southern Farm Bureau Cas. Ins. Co.,* 212 So.2d 471 (La.App. 1968), aff'd 254 La. 429, 223 So.2d 858 (1969); 8 Appleman, Insurance Law and Practice, § 4892 (1962); 8 Blashfield, Automobile Law and Practice, § 3438 (3d ed. 1966); 2 Long, Law of Liability Insurance, ¶ 21.01 et seq. (1975).

■ In this case the evidence clearly shows that the Hartford acted in complete good faith in paying Meekins $10,000 in settlement of his claim. His injuries were extensive, and if his claim had not been

1. Betty Jean Davis, who has not been represented by counsel, first filed an application for PIP benefits on June 14, 1973, some four weeks after the accident. No amount of medical expenses were claimed on that application, although it was apparent from the description of injuries that some expenses would be incurred. Lost wages were claimed from the date of the accident, at an average rate of $156 every two weeks. Beginning on September 6, 1973, the Hartford made total payments for "lost wages" to Betty Jean Davis in the amount of $6,143.57 over a period of approximately 41 weeks, an average of over $149 per week, nearly twice the weekly amount claimed by her on her application for PIP benefits. It also appears that the second of the checks paid to Betty Jean Davis was dated about 30 weeks after the accident, but together with the first check purported to compensate her for 40 weeks of lost wages. However, in October 1973 the Hartford received information that during the period February 15, 1973, to May 19, 1973, Betty Jean Davis had two jobs, with total earnings of some $165 a week.

settled Meekins might well have obtained a large judgment against Betty Jean Davis, the named insured, the owner of the car, who was in the car at the time of the accident, as well as against the estate of Willie Davis, the driver of the car. The settlement of Chester's claim for $327.50 was also made in good faith. Settlement of the claim of Kennedy's estate by the payment of $467.95 under the liability provisions and $1,903.60 under the PIP provisions of the policy was not improper. This is not a case where the failure to settle with one or more claimants has substantially increased the danger to the insured of a judgment or judgments over policy limits. *Gaskill v. Preferred Risk Mutual Ins. Co.,* 251 F.Supp. 66 (D.Md.1966), aff'd 371 F.2d 792 (4 Cir. 1966); *State Farm Mutual Auto. Ins. Co. v. White,* 248 Md. 324, 236 A.2d 269 (1966). Cf. *State Farm Liberty Mutual Ins. Co. v. Davis,* 412 F.2d 475 (5 Cir. 1969); *Brown v. United States Fidelity & Guaranty Co.,* 314 F.2d 675 (2 Cir. 1963).

These settlements reduced to $9,204.55 the liability of the Hartford under the ordinary liability provisions of its policy. Having paid $9,532.05 into court under the provisions of 28 U.S.C. 1335(a)(2) the Hartford is entitled to a decision releasing it from further liability with respect to the ordinary liability provisions of its policy.[2] The remaining claimants (Dodd, Deedon, Matthews and Lockwood) must divide the $9,204.55 among themselves on the basis of their respective damages, to be determined later in this opinion.

II. Personal Injury Protection (PIP).

No payments were made to Dodd, Deedon, Matthews or Lockwood under either the PIP or the liability provisions, although offers to settle both the ordinary liability and PIP claims in the total amounts which it has paid into court in this case, less the $327.50 payment to Chester, were made by the Hartford in 1974. No PIP benefits were paid to Dodd, Deedon, Matthews and Lockwood even though the Hartford knew by July 1973 that all four of them had substantial claims for medical expenses or loss of earnings or both. Nevertheless, beginning in September 1973, the Hartford paid Betty Jean Davis, the named insured, medical expenses of $1,473.60 (all that she had claimed), lost earnings of $6,143.57 (nearly twice the amount claimed on her application for PIP benefits (see note 1 above), and extra household expenses of $162.00. In addition, the Hartford paid directly to Betty Jean Davis $1,133.50 for Willie Davis' funeral bill, although she had not paid the bill and thereafter paid only $250 on account thereof.

No case has been cited or found dealing with the duty of an insurer in handling claims for PIP benefits. This court concludes that the duty of the insurer is to act in good faith toward all persons having PIP claims; but the determination of what is good faith with respect to the PIP provisions of the policy involves different considerations from those involved with respect to the liability provisions. The duty of the insurer to protect its insured from a possible large judgment over the limits of the policy (see cases cited above) does not apply to PIP provisions. Under PIP all occupants of the car, including the named insured, are beneficiaries of the policy with respect to the PIP coverage.[3] See 21 Del.C. § 2118(a)(2)c (1975 Supp.). The insurer may not discriminate in favor of the named insured against other beneficiaries who are also entitled to PIP benefits.

The record in this case shows that the Hartford discriminated in favor of its named insured against Dodd, Deedon, Matthews and Lockwood by failing to advise these claimants that the $20,000 policy limits might be exhausted if they failed to apply for PIP benefits promptly. The Hartford's claim representative sent PIP

---

**2.** The payment into court failed to take into account the payment of $327.50 to Chester under the liability provisions. Since this was a fair payment, the Hartford will be given credit in full for that payment. See Part III of this opinion.

**3.** So are any pedestrians who may have been injured in the accident.

application forms to counsel for Dodd, Deedon, Matthews and Lockwood on August 30, 1973, before any payments to Betty Jean Davis or anyone else had been made. On September 7, 1973, counsel responded:

"Thank you for providing me with the No-Fault Benefits form. As soon as my clients reach their maximum improvement, forms will be completed and forwarded to you promptly. In the meantime, I thank you for your patience and cooperation herein."

Upon receipt of this letter on September 10, 1973, the Hartford knew that the claimants would delay the return of their applications; yet thereafter it made additional payments of $6,126.52 to Betty Jean Davis, its named insured, without informing other claimants that delay in filing their applications was reducing the PIP limits available to them. Under the circumstances shown by the evidence, the Hartford had a duty to inform the other claimants that PIP payments would be made currently. From and after the time the applications would have been received if the applicants had been made aware of the need for prompt filing, the Hartford had the duty to divide subsequent payments fairly among all persons having valid PIP claims, including the named insured.

■■■ In this case, no payments were made to anyone between September 6 and December 19, 1973. The Hartford is entitled to full credit for the PIP payments in the amount of $1652.65 made to Betty Jean Davis on September 6, 1973, for lost wages and medical expenses. It is not entitled to full credit for the PIP payments made to her thereafter beginning on December 19, 1973, after the Hartford became aware that the attorney for Dodd, Deedon, Matthews and Lockwood was going to delay filing their claims. Nor is the Hartford entitled to full credit for the PIP payment made to

Betty Jean Davis individually for the funeral expenses of Willie Davis.

### III. Calculation of Damages

#### A. PIP Benefits

■■■ By September 7, 1973, the Hartford had paid to Betty Jean Davis $1652.65 for medical expenses and lost wages at the rate of $75 per week. Under the principles set out in Part II of this opinion, those payments as well as the 1974 payment to Kennedy's estate of $1903.60 under PIP, were proper.[4] The payment to her of $1133.50 for the funeral expenses of Willie Davis would not have been improper if she had actually paid the bill. See 21 Del.C. § 2118(a)(2)a 1. However, the court finds that this payment was not proper, because the Hartford neither obtained evidence that the bill had been paid nor took steps to see that the payment would be used for that purpose, such as by making the check payable jointly to Betty Jean Davis and the funeral director. PIP claims other than the $1,652.65 paid to Betty Jean Davis on September 6, 1973, for medical expenses and lost wages and the $1,903.60 paid to Kennedy's estate, must be prorated. The available fund is $20,000 (the per-accident limit for PIP under the policy), less the payments of $3,556.25, for which they are entitled to full credit, a difference of $16,443.75.

(1) Betty Jean Davis. (a) In addition to the items covered by the payments on September 6, 1973, for which the Hartford has been given full credit, the evidence shows that Betty Jean Davis had a valid PIP claim for medical expenses, lost wages and household expenses, for which she filed claim and was paid, in the total amount of $6,126.52. That amount should be included in the proration.

(b) The claim for the funeral expenses of Willie Davis, which were $1,133.50, is also a valid PIP claim. In calculating the balance

---

4. The payments to Kennedy's estate in settlement of all claims came partially from the PIP portion ($1903.60) and partially from the liability portion ($467.95) of the policy. The record reveals no reason for such allocation of the settlement; however, by settling from either source, the Hartford performed its duty to the insured of protecting her (and her husband's estate) from judgments in excess of the liability limits. Such use of the PIP benefits does not amount to bad faith in the circumstances of this case.

which the Hartford must pay into court to satisfy its PIP obligations, it has not been given credit for the $1,133.50 paid to Betty Jean Davis for this item. The item will therefore be included in the proration.

(2) Hilda Matthews has a PIP claim for medical expenses of $12,390.39. She had no lost wages.

(3) Cora Lockwood has a PIP claim for medical expenses of $113 and lost wages of $16, a total of $129.

(4) Algie Dodd has a PIP claim for medical expenses of $4,060.50, and lost wages of $1,736, a total of $5,796.50.

(5) Leonard Deedon has a PIP claim for medical expenses of $376.30 and lost wages of $647.36, a total of $1,023.66.

A proration of the claims so that they total the remaining coverage under the PIP portion of the policy, as determined above, viz. $16,443.75, gives the following amounts:

| | | |
|---|---|---|
| Davis | — | $ 4,488.12 |
| Matthews | — | 7,659.69 |
| Deedon | — | 632.82 |
| Lockwood | — | 79.75 |
| Dodd | — | 3,583.37 |

Betty Jean Davis will not be awarded any part of her prorated share, because she has already received a larger amount from the Hartford. The shares of the other four persons in the proration total $11,955.63. The Hartford has paid into court $9,183.73, which it claimed to be the remaining PIP coverage. The difference is $2,771.90, against which the Hartford is entitled to a credit of $327.50, representing an overpayment into court of the Hartford's remaining ordinary liability coverage; the net amount, $2,444.40, must be paid into court by the Hartford to obtain a release from all liability under its policy.

B. Ordinary Liability

The Hartford has settled the liability claims of Meekins (for $10,000), of Kennedy's estate (for $467.95) and of Chester (for $327.50), a total of $10,795.45, leaving a balance of $9,204.55. As noted above, it paid into court $9,532.05 under the ordinary liability provisions of its policy, an overpayment of $327.50, which the court has credited against the Hartford's remaining obligation under the PIP provisions.

After considering all of the evidence, the court finds (1) that the value of the liability claims of Matthews, Dodd, Deedon and Lockwood will exceed the amount of liability coverage remaining, and (2) that said balance of $9,204.55 should be divided among the four remaining liability claimants, as follows: 75% to Matthews ($6,903.41); 20% to Dodd ($1,840.91); 4% to Deedon ($368.18); and 1% to Lockwood ($92.05).

 Although the Hartford asked for costs and attorney's fees, the facts of this case do not justify the allowance of attorney's fees to it; the court costs are small and should be borne by the Hartford.

The court expresses its appreciation to counsel for their fair presentation of a novel and troublesome case.

Counsel should agree upon the form of a final judgment.