**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 25, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RACHEL KANNADAY,

      Plaintiff – Appellant/Cross-
      Appellee,

v.

CHARLES BALL, Special Administrator
of the Estate of Stephanie Hoyt,

      Defendant,

v.

GEICO INDEMNITY INSURANCE
COMPANY,

      Garnishee - Appellee/Cross-
      Appellant.

No. 14-3183 & 14-3222
(D.C. No. 2:12-CV-02742-JTM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **BALDOCK**, and **HOLMES**, Circuit Judges.
_____

This bad faith insurance action arises out of an automobile accident in which

Genevie Gold, Sharon Wright, and Plaintiff Rachel Kannaday were seriously injured

after the driver, Stephanie Hoyt, deceased, made an improper U-turn. Hoyt had a

GEICO insurance policy with limits of $25,000 per person and $50,000 per accident,

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

which was insufficient to cover the passengers' serious injuries. Kannaday sued Hoyt's estate for negligence in Kansas state court and obtained a verdict of over $4 million. Kannaday then brought this garnishment action against GEICO, alleging that GEICO had acted in bad faith in failing to settle and defend Hoyt's estate. After a three-day bench trial, the district court found that GEICO had acted in good faith and without negligence. In this appeal, Kannaday challenges a number of the district court's factual and legal conclusions and asks us to certify two questions to the Kansas Supreme Court, while GEICO seeks to cross-appeal the earlier denial of its motion for summary judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's factual conclusion that GEICO did not act in bad faith or negligently and will thus not reach the remaining issues or certify any questions to the Kansas Supreme Court.

## I.

On July 13, 2005, Stephanie Hoyt attempted to make an improper U-turn on Interstate 35 in Kansas. Charles Church, who was driving a semi-truck that Chris Truck Line owned, struck Hoyt's vehicle. Hoyt died instantly, and her three passengers—Gold, Wright, and Kannaday—were seriously injured. Kannaday's injuries were more severe than Gold's or Wright's.

Hoyt's insurance through GEICO provided a bodily injury limit of $25,000 per person and a maximum of $50,000 per accident. Less than a month after the accident, Kwirt Roarick, a GEICO claims adjuster, received the Kansas Highway Patrol report, which presented credible evidence that Hoyt was at fault in the

2

accident. Roarick advised Lanny Hamp, Hoyt's father, that the accident liability would far surpass policy limits. On October 5, Gold's attorney Doug Greenwald submitted a demand letter and proposed dividing the $50,000 per accident proceeds equally among the three passengers, so each passenger would receive about $16,667. GEICO already knew by that time that Kannaday's hospital bill exceeded $140,000 and that Wright's hospital bill exceeded $90,000. GEICO learned two days after Gold's proposal that Gold's hospital bill exceeded $44,000, Wright's bill exceeded $95,000, and Kannaday's bill exceeded $158,000. GEICO did not respond to Gold's letter or inform Hamp or the other injured passengers about the proposal. Instead, Roarick investigated whether the passengers had underinsured motorist (UIM) benefits available to supplement the benefits they would receive from Hoyt's policy. GEICO made its first settlement offer on November 4, 2005. Roarick offered $12,500 to both Wright and Kannaday based on the mistaken belief that they would have UIM benefits and would ultimately receive $25,000. He offered $25,000 to Gold because she was the only passenger without UIM coverage. Sabrina Brantley took over the case from Roarick in the middle of November and reiterated GEICO's settlement offers in December.

Beginning on January 14, 2006, six months after Hoyt's death, the Kansas nonclaim statute, Kan. Stat. Ann. § 59-2239, barred the enforcement of claims against Hoyt's estate's assets. Five days later, on January 19, attorney Paul Hasty, acting on Kannaday's behalf, offered to settle Kannaday's claim for $25,000, stressing that she was the most seriously injured passenger. GEICO asked the firm

3

Fleeson, Gooing, Couson & Kitch to respond to Kannaday's demand and negotiate settlements that would distribute the policy limits proceeds. The Fleeson firm recommended that GEICO interplead the $50,000 policy limits in court, which GEICO authorized in the beginning of February. By February 21, Gold accepted the $25,000 offer, decreasing the amount available for the interpleader action to $25,000. On February 22, Fleeson wrote Kannaday to repeat GEICO's prior $12,500 offer, explaining that Gold accepted $25,000.[1] On February 24, Hasty sent a response again demanding $25,000 but withdrew the demand on February 27.

On March 23, 2006, Fleeson filed GEICO's interpleader action in the United States District Court for the District of Kansas, naming as potential claimants Kannaday, Wright, Charles Church, Chris Truck Line, Liberty Mutual Fire Insurance (the workers compensation carrier for Chris Truck Line), Metropolitan Life Insurance Company (Kannaday's personal injury protection (PIP) carrier), and Wesley Medical Center. Only Kannaday and Wesley Medical Center answered the interpleader. In January 2007, while the interpleader was pending, Wesley offered to accept $6,000 in full and complete satisfaction of Kannaday's bill over $150,000, release the lien, and release Kannaday of all personal liability. Kannaday did not respond. In February 2008, the federal district court awarded the $25,000 that GEICO had tendered to

---

[1] The federal district court, following a bench trial, found that GEICO did not reject Kannaday's January 19, 2006 offer for $25,000, but rather that Kannaday withdrew the offer on February 27. After reviewing the record, we are left with a definite and firm conviction that this particular finding of fact is erroneous. GEICO rejected Kannaday's January 19 offer when it counteroffered $12,500 on February 22. GEICO did not reject Kannaday's second offer of $25,000 because she withdrew it before GEICO had sufficient time to respond to it.

4

Wesley Medical Center for its hospital lien, which benefitted Kannaday by reducing the amount she owed the hospital. The federal district court also issued an injunction barring any of the interpleader defendants from pursuing a claim outside the interpleader action against the $25,000 insurance proceeds.

On March 17, 2006, about a week before GEICO filed the interpleader action, Kannaday petitioned the District Court of Wyandotte County, Kansas, to appoint Charles Ball as a special administrator for Hoyt's estate and then sued the estate for Hoyt's negligence in the accident. GEICO retained the Fleeson firm to defend the estate. Fleeson sent a letter to Ball informing him that GEICO had retained it to defend the estate. Between April 21, 2006, and April 12, 2012, Fleeson sent dozens of letters to Ball regarding case developments and advising him that the nonclaim statute protected estate assets, but Ball responded only once with signed discovery responses and a copy of his appointment as the special administrator. In September 2006, Ball signed a settlement agreement and sent the agreement to Fleeson without any cover letter or commentary. The settlement agreement allowed Kannaday to present her evidence to the District Court of Wyandotte County *ex parte*, and in exchange, Kannaday agreed not to execute judgment on Hoyt's estate assets but to seek recovery only from GEICO. Fleeson told Ball that it would soon file a motion for summary judgment regarding the nonclaim statute to protect the estate's assets; because Ball did not respond, Fleeson retained the settlement agreement and did not forward it to Kannaday. In December 2006, the District Court of Wyandotte County held that the nonclaim statute barred any claims against Hoyt's estate's assets, stating

Kannaday could reach only the GEICO policy. A year later, in December 2007, Hasty deposed Ball, during which Ball signed a nearly-identical *ex parte* Settlement Agreement, despite the District Court of Wyandotte County's ruling regarding the nonclaim statute. In March 2008, in response to a request for production, Fleeson produced a copy of the original Settlement Agreement to Hasty. Kannaday signed the Settlement Agreement in March 2009. The following day, the District Court of Wyandotte County conducted an *ex parte* hearing and awarded Kannaday over $7 million in damages. Fleeson learned of the *ex parte* award only after the journal entry of judgment was filed; it appealed the judgment.

In June 2010, the Kansas Court of Appeals determined that because Kannaday filed her negligence action outside the nonclaim statute's period, she could not recover any estate assets. Nonetheless, the Kansas Court of Appeals held that the nonclaim statute did not bar Kannaday's negligence suit, because the GEICO policy was not an estate asset. Although the injunction from the federal interpleader barred any actions against the policy proceeds, the Kansas Court of Appeals said the federal court's injunction did not prevent any possible future claims against GEICO for bad-faith failure to settle Kannaday's claim. The Kansas Court of Appeals also held that the settlement agreement was invalid because it was not supported by consideration. Because the nonclaim statute barred Kannaday from collecting from Hoyt's estate, her promise to not execute judgment on the estate's assets was illusory. The Kansas Supreme Court denied review of the case. Following remand and a bench trial, the

6

District Court of Wyandotte County granted judgment in favor of Kannaday and held Hoyt to be 100% liable for damages of over $4 million, plus costs.

In November 2012, Kannaday brought this garnishment action in the District Court of Wyandotte County against GEICO, alleging among other things that GEICO acted in bad faith and breached its duty to Hoyt's estate by failing to settle Kannaday's claim within policy limits. GEICO removed the case to federal district court on the basis of diversity jurisdiction. The district court denied GEICO's motion for summary judgment, explaining that although the nonclaim statute protected the estate's assets, the estate still suffered damage through the adverse judgment. The district court relied on the judgment rule, which states that an action against an insurance company will lie regardless of whether the insured has paid or can pay the portion of the judgment in excess of the policy limits. *Farmers Ins. Exch. v. Schropp*, 567 P.2d 1359, 1369 (Kan. 1977).

The case was transferred and assigned to a different district court judge for a bench trial. After a three-day trial, the district court entered judgment for GEICO. The district court concluded that because the estate had no assets and the nonclaim statute precluded any claim on any assets that did exist, the estate's interests were in a practical sense identical to GEICO's. Thus, the Fleeson firm did not have a conflict of interest in representing both GEICO and the Hoyt estate, although Fleeson still owed a duty to act in the estate's best interests. The district court stated that Ball was essentially a name to be sued and that Fleeson owed its duty to the estate, not to Ball; nonetheless, it concluded that Fleeson's communications with Ball were reasonable

7

and adequate in light of the circumstances of the case. It concluded GEICO never refused to settle the injured passengers' claims but instead demonstrated a desire to settle all claims for the "per accident" policy limits. Further, it held the interpleader action was a reasonable and appropriate method for meeting GEICO's obligations, the offer of $25,000 to Gold was reasonable considering she was the only passenger represented by counsel at the time GEICO made the offer, and GEICO appropriately considered UIM coverage when making its offers. Ultimately, the district court concluded settlement was not possible because Kannaday was only interested in creating a bad faith claim against GEICO. The district court stated GEICO acted in good faith, reasonably, and without negligence in its investigation, communications, negotiations, and settlement efforts. Although GEICO was not error-free in its actions, neither GEICO nor Fleeson harmed the estate by any breach of duty. Further, the district court found for GEICO on an affirmative defense: Ball failed to cooperate, which relieved GEICO of its contractual obligations.

Kannaday appeals, arguing GEICO had a conflict of interest with the Hoyt estate and breached its duty of good faith and reasonable care. She contends the district court failed to apply the judgment rule and erroneously concluded that Ball breached the policy by failing to cooperate. She also requests that we certify two questions to the Kansas Supreme Court regarding the conflict of interest and judgment rule. GEICO asks us to

8

affirm the district court's findings of fact and conclusions of law and, through a cross appeal, argues the district court should have awarded it summary judgment.[2]

## II.

In an appeal from a bench trial, this court must view the evidence presented to the trial court in the light most favorable to the prevailing party. *Raydon Exploration, Inc. v. Ladd*, 902 F.2d 1496, 1499 (10th Cir. 1990). "[W]e review the district court's factual findings for clear error and its legal conclusions de novo." *Keys Youth Servs., Inc. v. City of Olathe*, 248 F.3d 1267, 1274 (10th Cir. 2001). The district court's factual findings are clearly erroneous only if they are "without factual support in the record, or if the

---

[2] GEICO explained at oral argument that it filed the cross appeal to clear up a potential discrepancy between the initial district court judge's opinion on summary judgment and the subsequent district court judge's decision after bench trial, but it acknowledged the cross appeal would not alter the relief it received under the judgment. Instead of filing a cross-appeal, GEICO should have simply raised its challenge to the district court's denial of summary judgment in its Response Brief as an alternative ground for affirmance. A cross-appeal is necessary when a litigant seeks to enlarge his rights or lessen the rights of his adversary under the original judgment, but a cross-appeal is not necessary when, as here, the appellee seeks to defend that judgment on any ground supported by the record. *Compare Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1198 (10th Cir. 2010) ("A cross-appeal ordinarily would be appropriate where a litigant seeks to enlarge his rights conferred by the original judgment or to lessen the rights of his adversary under that judgment."), *with Wyoming v. U.S. Dep't of Agric.*, 661 F.3d 1209, 1254 n.33 (10th Cir. 2011) ("[A]n appellee is generally permitted to defend the judgment won below on any ground supported by the record without filing a cross appeal." (internal quotation marks omitted)). Without taking a cross-appeal, GEICO could "'urge in support of a decree any matter appearing before the record, although his argument may involve an attack upon the reasoning of the lower court.'" *Jennings v. Stephens*, 135 S. Ct. 793, 798 (2015) (quoting *United States v. Am. Ry. Exp. Co.*, 265 U.S. 425, 435 (1924)). We will therefore treat GEICO's arguments on the cross-appeal as an alternative basis for affirming the district court's judgment in its favor. *See United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 958 (10th Cir. 2011).

appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made. If there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Curtis v. Okla. City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1217 (10th Cir. 1998) (citation and internal quotation marks omitted).

The federal court's task in cases arising under diversity jurisdiction is "simply to 'ascertain and apply the state law.'" *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)). "[T]he Court's task is to predict what the state supreme court would do." *Id.* at 666. We review *de novo* the district court's interpretation of state law. *Id.*

Under established Kansas law, an insurance company's negligent or bad faith rejection of an injured party's offer to settle within the policy's limits is a breach of its contract with the insured and gives rise to liability for any judgment in excess of the policy limits. *See Wade*, 483 F.3d at 660 (citing *Bollinger v. Nuss*, 449 P.2d 502, 508 (Kan. 1969)). The Kansas Supreme Court has described the insurer's duty to conduct itself both in good faith and without negligence, but stated that the "two rules have tended to merge," and emphasized that the ultimate question of liability turns on various factors present in the particular case. *Bollinger*, 449 P.2d at 511–12. Those factors include:

> (1) the strength of the injured claimant's case on the issues of liability and damages; (2) attempts by the insurer to induce the insured to contribute to a settlement; (3) failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; (4) the insurer's rejection of advice of its own attorney or

10

agent; (5) failure of the insurer to inform the insured of a compromise offer; (6) the amount of financial risk to which each party is exposed in the event of a refusal to settle; (7) the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and (8) any other factors tending to establish or negate bad faith on the part of the insurer.

*Id.* at 512. Whether any of these factors has been established is a question of fact and the district court's finding will not be set aside unless clearly erroneous. *Ins. Co. of N. Am. v. Med. Protective Co.*, 768 F.2d 315, 321 (10th Cir. 1985).

## A. Conflict of Interest

Although the district court concluded after the bench trial that no conflict of interest prevented the Fleeson firm from representing both GEICO and Hoyt's estate, Kansas law describes an inherent conflict of interest arising between the insured and insurer when a claim for damages exceeds policy limits. *Coleman v. Holecek*, 542 F.2d 532, 537 (10th Cir. 1976) ("The duty to consider the interests of the insured arises . . . because there has been a claim for damages in excess of the policy limits); *see also Williams v. Am. Family Mut. Ins. Co.*, 6 F. App'x 756, 760 (10th Cir. 2001) ("The Kansas Supreme Court has recognized an inherent conflict of interest when an insurer is faced with a claim against its insured for an amount in excess of the policy limits."). This conflict of interest does not necessarily prohibit the insurer's attorney from representing both the insured and the insurer. Rather, the conflict requires the insurer to "give at least equal consideration to the interests of the insured" and to "conduct itself with that degree of care which would be used by an ordinarily prudent person in the management of his own business, with no policy limits applicable to the

11

claim." *Bollinger*, 449 P.2d at 511. The insurer must evaluate the excess claim "without looking to the policy limits and as though it alone would be responsible for the payment of any judgment rendered on the claim." *Coleman v. Holecek*, 542 F.2d 532, 537 (10th Cir. 1976). Although the district court incorrectly concluded there was no conflict between GEICO and Hoyt's estate, it nonetheless evaluated whether GEICO acted in bad faith under the *Bollinger* factors, which is the same analysis that would be required upon a finding of a conflict. The real question is thus whether the record supports the district court's factual conclusion that GEICO acted in good faith and without negligence.

### B. Good Faith and Reasonable Care

The district court concluded after a bench trial that GEICO did not act in bad faith in handling the case. After reading the voluminous record, we conclude that sufficient evidence supports the district court's conclusion, even though there is some evidence that points to GEICO's negligence or bad faith in handling the claims. The district court reached its conclusion after weighing certain *Bollinger* factors more heavily than others and considering other factors that negated bad faith, which was appropriate for it to do as the fact-finder. Because the evidence does not leave us with the definite and firm conviction that a mistake has been made, *see Curtis v. Okla. City Pub. Sch. Bd. of Educ.*, 147 F.3d at 1217, we will affirm the district court's judgment for GEICO.

Some factors admittedly weigh in Kannaday's favor. Importantly, Kannaday's case for liability and damages was strong. GEICO knew early in the case that all

12

three passengers were seriously injured and policy limits would not adequately compensate them for their claims. It learned on August 5, 2005, that Hoyt was primarily at fault for the accident. The high damages and strong case of liability against Hoyt should have caused GEICO to attempt to settle within policy limits if possible. Additionally, GEICO failed to inform Hoyt's father or the other injured claimants about Gold's proposal to split the policy proceeds equally among the passengers. GEICO ignored the suggestion and instead based its settlement offer on an incorrect assumption about Kansas UIM law, and thus offered Gold more than she requested. It failed to inform Hoyt's father about Kannaday's two offers to settle for $25,000. And it interpleaded the remaining funds after Gold accepted its offer, even though the interpleader did not protect Hoyt's estate from a judgment against it.

The district court noted that GEICO was not error free in how it handled the claims against Hoyt's estate, but it concluded overall the errors were relatively minor, largely identifiable through hindsight, and did not have a real or tangible impact on the insured. For example, the district court dismissed GEICO's failure to respond to Gold's offer to split the proceeds equally by noting that no evidence suggested Kannaday would have accepted a third of the proceeds. Twice, she made a demand for half the policy limits. While the interpleader was ongoing, she failed to respond to Wesley Medical Center's offer to accept $6,000 in full and complete satisfaction for her hospital bills over $150,000, which would have left $19,000 in the interpleader for her since only she and Wesley Medical Center had filed answers.

13

Regarding GEICO's misunderstanding of UIM coverage in Kansas and incorrect conclusion that only Gold lacked UIM coverage, the district court concluded the mistake was honest and not unreasonable. GEICO's offer attempting to maximize each injured passenger's recovery was not in itself bad faith; although GEICO's duty runs to its insured rather than the claimants, GEICO presented evidence at the bench trial that an insurance company's attempts to maximize a claimant's recovery is a strategy to satisfy the claimants, which decreases the risk for lawsuits against the insured. Although GEICO interpleaded the remaining funds rather than settle with Kannaday for half the policy limit, the Kansas Supreme Court has indicated that an insurance company has wide discretion in settling multiple claims. In *Farmers Insurance Exchange v. Schropp*, the Kansas Supreme Court described several of an insurer's potential alternatives:

> Farmers could well have notified all of the potential claimants involved that the value of the claims would doubtless exceed policy limits, and invite them or their attorneys to participate jointly in efforts to reach agreement as to the disposition of the available funds. Alternatively, Farmers could have attempted to settle claims within the policy limits as they were presented. Or, as a third alternative, Farmers could have promptly and in good faith commenced an interpleader action, and paid its policy limits into court.

*Farmers Ins. Exchange v. Schropp*, 567 P.2d 1359, 1367 (Kan. 1977). Kannaday is also correct that GEICO *could* have exhausted its policy proceeds by accepting Kannaday's offer of $25,000. *See Castoreno v. W. Indem. Co.*, 515 P.2d 789, 795 (Kan. 1973) ("[A] liability insurer may in good faith settle part of multiple claims arising from the negligence of its insured even though such settlements deplete or

14

exhaust the policy limits of liability so that the remaining claimants have little or no recourse against the insurer."). We could not, however, identify any time where the Kansas Supreme Court has *required* an insurance company to settle with claimants on a first-come, first-serve basis, or to follow any set distribution method.

Kannaday further argues that Roarick and Brantley were inexperienced, they failed to follow GEICO policy, and GEICO failed to properly supervise them to correct their mistakes. Again, the record contains evidence to support the district court's conclusion that overall these errors were minor and did not have a tangible effect on the insured. For example, Roarick's failure to record Gold's initial offer in the GEICO claim activity log technically violated GEICO policy, but even had he recorded it and made the offer, evidence supports the district court's finding that Kannaday would not have accepted it. Brantley did not understand that the interpleader action would not release the insured from liability, but her misunderstanding of a method that the Kansas Supreme Court has suggested as a potential alternative for insurance companies to fulfill their obligation to act in good faith does not demonstrate bad faith.

The remaining factors on which the district court relied further negate a finding of bad faith. GEICO promptly and thoroughly investigated the accident and, after discovering Hoyt was primarily at fault and the passengers were seriously injured, never sought to pay less than the policy limits to the three passengers collectively. GEICO followed its attorney's advice and sought to distribute the full policy proceeds through an interpleader action.

15

One factor that the district court apparently relied on heavily was the financial risk to both parties. Kannaday first demanded $25,000 on January 19, 2006, after the nonclaim statute barred recovery from the estate's assets as of January 14, 2006. Although Kannaday contends that the district court's reliance on the nonclaim statute's protection after the bench trial ignored the initial district court judge's summary judgment conclusion and the Kansas Court of Appeals' determination, we disagree. The Kansas Court of Appeals held that neither the nonclaim statute nor the injunction from the interpleader barred Kannaday from pursuing her negligence claim, but confirmed she could not collect from Hoyt's estate. The only money at risk was GEICO's in a subsequent bad-faith case if she prevailed. Although we do not have to directly review the initial district court judge's application of the judgment rule in summary judgment, we can assume the Kansas Supreme Court would apply the judgment rule in this case and find that Hoyt's estate was damaged when there was an excess judgment against it. But again, the question of whether the estate was damaged is different than the question of whether it faced any financial risk. We do not see any support for requiring a court to ignore the effect of the nonclaim statute during a bad-faith action. Indeed, the *Bollinger* factor asks about the *financial* risk to the parties, not the risk of a judgment alone. This does not run afoul of the judgment rule, even assuming it applies. We think the district court after the bench trial correctly considered the nonclaim statute's effect on the financial risk Hoyt's estate and GEICO faced during the settlement negotiation period with Kannaday. The district court concluded, and we agree, that the nonclaim statute

16

protected the estate assets after January 14, 2006, and thus any *financial* risk for failing to settle after that time would affect GEICO, not Hoyt. Before January 14, 2006, the estate did face financial risk if GEICO failed to settle, but the evidence does not require a finding of bad faith during that time. The only party to make a demand prior to January 14, 2006, was Gold. While the estate was at risk, GEICO investigated the accident and the injured passengers' damages and attempted to settle with them to protect the estate. Kannaday did not respond to the offer to settle until after the nonclaim statute passed. GEICO actively sought to settle the claims before January 14, 2006, and the failure to settle was not because of its lack of effort, but Kannaday's.

**III.**

The district court concluded after a bench trial that the *Bollinger* factors, when applied collectively, do not support Kannaday's claims of negligence or bad faith. Evidence appears in the record to support this conclusion, and our review of the voluminous record does not leave us with a definite and firm conviction that the district court made a mistake. We affirm the district court's entry of judgment in GEICO's favor. This conclusion resolves the appeal and we do not need to reach the remaining issues that the parties raised. We deny Kannaday's motion to certify questions of state law to the Kansas Supreme Court.

17

**AFFIRMED.**

Entered for the Court


Bobby R. Baldock
Circuit Judge

18